STATE v. JOHN HUBANKS ET AL.

[56 South. 163.]

CRIMINAL LAW. *False pretences. Indictment. Requisites.*

An indictment for obtaining money under false pretenses under Code 1906, section 1166, charging that accused intending to cheat an insurer and the beneficiary in a life insurance policy, fraudulently pretended to the insurer that he was the beneficiary in the policy and that insured was dead, by means of which he *obtained from* insurer three hundred dollars and further charging that the policy was not the property of accused and that he was not the beneficiary therein named, and that insured was not dead, is fatally defective in failing to charge the ownership of the money obtained and in failing to to charge that the beneficiary in the policy had not transferred or assigned it to accused.

APPEAL from the circuit court of Sunflower county.

HON. J. C. WARD, Special Judge.

John Hubanks and others were indicted for obtaining money under false pretenses. From a judgment sustaining a demurrer to the indictment the state appeals.

The facts are as follows:

Defendants were indicted under section 1166 of the Code of 1906, which is as follows: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained."

The indictment, to which a demurrer was filed, omitting formal parts, charges that the defendant "unlaw-

fully and feloniously devising and designedly intending to cheat and defraud the International Order of Twelve of Knights and Daughters of Tabor, a corporation, and one Isaac Cook and one Manuel Potts having then and there a certain life insurance policy heretofore issued by the said corporation upon the life of one Piley Cook, which said policy was then in full force and effect and binding upon the said corporation and the said Piley Cook, and by which said policy the said corporation agreed and became bound to pay to the beneficiaries named therein, to-wit, Isaac Cook and Manuel Potts, three hundred dollars in money upon the death of the said Piley Cook, a more particular description of the said insurance policy being to the grand jurors unknown, did then and there unlawfully, feloniously, falsely, designedly, and fraudulently pretend to the said corporation that the said policy was the property of the said Hubanks, and that the said Hubanks was the beneficiary named in the said policy, and by virtue of a false token in writing, called a proof of death, did then and there unlawfully, feloniously, falsely, designedly and fraudulently pretend to the said corporation that the said Piley Cook was dead and the said sum of three hundred dollars was due and payable by the said corporation to the said Hubanks by reason of the terms of the said policy and of the death of the said Piley Cook and of the said proof of loss, a more particular description of the said proof of loss being to the grand jurors unknown, by means of which said false pretenses they, the said Hattie Clarke, John Hubanks, and J. E. Walker, did then and there unlawfully, feloniously, falsely, designedly, and fraudulently obtain of and from the said corporation three hundred dollars in money, of the value of three hundred dollars; whereas, in truth and in fact, the said policy was not the property of the said Hubanks, and the said Hubanks was not the beneficiary named in the said policy, and the said Piley Cook was not

dead, but was then living, and the said sum of three hundred dollars was not due and payable by the said corporation to the said Hubanks by reason of the terms of said policy, and by reason of the death of the said Piley Cook, and by reason of said proof of loss, all of which they, the said Hattie Clarke, John Hubanks, and J. E. Walker, then and there well knew, against the peace and dignity of the state of Mississippi."

*James R. McDowell,* assistant attorney-general, for appellant.

The ninth ground of error is predicated upon the fact that the indictment does not show that the money was the property of the corporation. This is a matter of proof. Being in the possession of the prosecution from whom the defendant obtained it is *prima facie* evidence of his ownership, but it is not necessary to charge in the indictment that he was the owner. The gist of the offense is the false pretenses perpetrated upon the party from whose possession the property was obtained. It might frequently occur that ownership may be charged on one person when the title would be found to be in another. See 12 Am. and Eng. Ency. Law (2d Ed.), p. 828, note 1. The definition given by Mr. Bishop of false pretenses is as follows: "A false pretense is such a fraudulent representation of an existing or past fact by one who knows it is not true as is adapted to induce the person to whom it is made to part with something of value." The false pretenses, by means of which something of value is obtained from another in the gist of the offense, and the fact that the indictment charges that one obtains from another by means of false representation goods of value, sufficiently defines the crime, in the light of this definition and of our statute, and certainly puts the defendant on notice of what he is called

upon to defend. On the trial, of course, it is necessary to show that the property is that of another and not that of the defendant; but this is a matter of proof.

The demurrer on the 19th ground set up that the indictment fails to show that said life insurance policy was assigned or transferred to the defendants. This is not necessary. The state has nothing to do with any transfer from Cook and Potts to the defendants. This is a matter of defense, if it was transferred to the defendant, and Cook and Potts can set it up. The allegation is that the parties falsely represented that Hubanks was the beneficiary when he was not and they knew it when the representations were made.

With reference to any fraud being practiced upon Cook and Potts, that may be treated as surplusage, if it can be proven that the corporation was defrauded of the money by these false representations. The fact that the indictment charges that the corporation was defrauded, sufficiently states the offense.

Reading again the indictment in the light of Mr. Bishop in his Directions and Forms (2d Ed.), chapter 33, as to what should be set out in an indictment, I fail to agree that this indictment is fatally defective. It is true it could have been much more carefully worded and the offense more concisely charged, but I believe it fills the purpose which an indictment is designed to fill. An indictment is not proper if argumentative, and it is not necessary to set out matters which are only matters of proof. An indictment has a purpose, and when its form is sufficient to carry out that purpose, it should stand.

*D. M. Quin,* for appellees.

The ninth ground of demurrer is to the effect that the indictment does not show any loss to said corporation, nor that the money paid to the defendants was the money or property of said corporation. Counsel for the state says that this is a matter of proof. Counsel cites the

definition given by Bishop of False Pretenses. Bishop's
New Criminal Procedure, sec. 173, subdivision 2, says:
"The ownership must be averred, or a valid reason
'given for the omission.' Money sent by a husband to
his wife for her support must be laid as his. A bailor
is for the purposes of this averment, an owner, the same
as in larceny." In the case at bar the indictment neither
shows that the money is the property of said corporation,
nor that it was in the hands of said corporation as bailor.
Counsel cites 12th Am. and Eng. Ency. Law, note 1, p.
828. I call the court's attention to the text beginning on
page 827 as follows:

"The ownership of property must be shown. This is
necessary to exclude the fact of the defendant's having
obtained his own goods or money, in which case there
can be no offense unless the prosecuting witness has
some special interest in the property. "The ownership
of the property as obtained by false pretenses must be
alleged distinctly. *State* v. *Blizzard,* 70 Md. 385. In the
case of *Thomas* v. *People,* 24 Ill. 60, 76 Am. Dec. 733,
it is said:

"The indictment contains two counts substantially
alike, in both of which alleging that the defendant 'in-
tending by unlawful means to get into his possession the
choses in action, money, goods, wares and effects, and
other valuable things of the people of this state,' etc.,
without any allegations it was the property of the per-
son sought to be defrauded, which we hold essential in
cases of this character. That person must be alleged to
be the owner of the property out of which he was de-
frauded.

In the case of *State* v. *Blizzard,* 14 Am. St. Rep. 370,
it is said: "The cases are numerous where it has been
held that the omission to allege the ownership of the
property was fatal to the sufficiency of the indictment,
even after conviction." In 2d Bishop's Criminal Pro-
cedure, par. 184, subdivision 2, it is said: "Ownership

must be proven as laid.'' . Evidently the allegation of ownership is a necessary allegation. In the recent Mississippi case, styled *Hampton* v. *State,* 54 So. 722, it is said: ''The rules of law in cases of larceny, with reference to alleging and proving the ownership of the property charged to have been stolen, apply with equal force to the crimes of embezzlement, false pretenses and other kindred offenses.'' See, also, 23 Cent. Dig., subject False Pretenses, par. 44. In an information for obtaining money by reason of false pretenses, it is not sufficient that it may be gathered by inference from the allegations thereof that the ownership of the money was in some person therein named, but such ownership is a material fact and should be directly averred. *Moulie* v. *State,* 37 Fla. 321, 20 South. 554. ''It is essential to the validity of an indictment for obtaining money by false pretenses, that the indictment should allege whose money was obtained.'' *Halley* v. *State,* 43 Ind. 509. I think these authorities sufficient to show that it is necessary to allege ownership in the indictment and not to rely on proving ownership strictly as a matter of proof as contended by counsel for the state. The only allegation in the indictment in the case at bar by which the pleader attempts to allege ownership is that the defendants did then and there unlawfully, feloniously, falsely, designedly and fraudulently obtain of and from the said corporation three hundred dollars.'' I submit that this allegation does not allege ownership, nor does it show that the money was not the property of the defendants.

I submit that it needs no citation of authorities to sustain the tenth ground of demurrer, because as suggested in the ninth ground, the ownership of the property should be alleged, and necessarily as suggested in the tenth ground, ownership of the property in the defendants should be negatived.

Counsel for the state jumps from the ninth to the nineteenth ground of demurrer, which latter ground I will

now consider. Whatever may be said of other grounds of the demurrer, I submit that at least the nineteenth ground is good and should be sustained. The nineteenth ground is as follows: "Because the indictment alleges that the beneficiaries named in said life insurance policy were Isaac Cook and Manwell Potts, and does neither show that said life insurance policy was assigned or transferred to the defendants or either of them, nor that it was negotiable, or payable by the said corporation when said life insurance policy was in the hands of, or was presented for payment by any one other than the beneficiaries named therein.

In the case *In re Schurman et al.*, reported in 20 Pa. Rep. 277, and which was a case for attempting to draw money on a life insurance policy, the insured not being dead, and the beneficiary named therein not being a party to the false pretense (very similar to the case at bar), the court says on page 281:

"It is not charged that any policy had been assigned, or that the beneficiary therein had been changed, nor yet, that the defendants had controlled the policy and intended to forge and assign or transfer the same. The pretenses are not alleged to have been brought to the attention of the beneficiary and there is no statement that it was intended to induce her to apply for the insurance money, either fraudulently or in good faith. It is not even stated that the false reprsentations were made to the company, or any of its agents. The company could not be defrauded unless the beneficiary, or some one for her represented to it that he was dead and applied for the insurance. None of the defendants had any interest in the policy, or any right to demand the payment of same, even if the insured had been actually dead. The means stated to have been employed for the purpose of obtaining the money were of themselves futile and vain to accomplish the intended end. They were not adequate nor suitable for the purpose, nor where they such that

would apparently produce the desired result,'' and on page 282 it is said: ''To charge the offense of obtaining money by false pretenses, the facts necessary to be established must be set out. As every promise or pretense is not crimiinal, those relied upon must be plainly alleged to enable the court to determine their indictable quality. The pretenses must be specifically negatived and it must be stated that they were made to some person to be injuriously affected by them and that upon the faith of such pretenses the money was obtained.'' ''All of the steps taken and specifically alleged to have been intended would not have operated to defraud the company. If Reddington was injured, had died and had been buried, as was pretended, then so far as the information shows, there was still no apparent ability on the part of the defendants to commit the fraud.'' I submit to the court that the indictment in this case shows no assignment of the policy, no change of the beneficiaries and nothing which gave the defendants, or Hubanks the right to collect the money on the death of Piley Cook or any obligation arising against the said corporation to pay the defendants, or any one of them any money on the presentation of the proof of death or ''proof of loss.'' In the case of *Woodbury* v. *State,* 69 Ala. 242, it is said: A false pretense to be indictable, must be calculated to deceive and defraud. As of an actionable misrepresentation, it must be of a material fact, on which the party to whom it is made has the right to rely; not the mere expression of an opinion, and not of facts open to his present observation, and in reference to which, if he observed, he could obtain correct knowledge.''

In the case of *State* v. *Blizzard,* 70 Md. 385, and which was an indictment for obtaining a valuable security, to-wit: ''A certain bill of sale, or mortgage of personal property for the payment of $600.00,'' etc., the court says: ''There is in the indictment before us manifestly great want of certainty and precision in the allegations

essential to constitute the crime. As will be observed, it is not shown by any averment in the indictment that the bill of sale or chattel mortgage (whichever it may be) was assigned or transferred to the defendant by the owner, or that anything passed to the defendant more than the mere paper-writing, without the least interest in the property embraced, or the money secured by the instrument." "It is a little difficult to say that an instrument such as that here described, without assignment or transfer, can be properly designated as a valuable security, of which a party has been deprived by false pretense, when nothing could pass to the defendant more than the paper upon which the instrument was written. The possession of the instrument by the defendant divested no right, nor did it invest the defendant with any right or power over the property or money secured by the instrument." "The indictment is radically defective in another particular, and that is, in its failure to allege distinctly the owenrship of the property or securities obtained. It is settled by all authorities that it is no less requisite in indictments for obtaining by false pretenses that the ownership of the property or securities obtained should be distinctly alleged than it is that such averments should be made in indictments for larceny."

I therefore submit that in order for the defendants, or either of them, to be liable for money paid to Hubanks upon the presentation of a proof of death, or "proof of loss" on a life insurance policy issued by said corporation on the life of Pily Cook for the benefit of Isaac Cook and Manwell Potts, the indictment should allege a change of the beneficiaries in the policy, which change was obtained by false pretenses on the part of the defendants, or an assignment and transfer of the policy to the defendant, or some one of them, and the ownership of the policy and the money obtained.

WHITFIELD, C.

The indictment in this case failed to charge the ownership of the money, the three hundred dollars, and also failed to charge that the beneficiaries in the policy had not transferred or assigned it to Hubanks. Both these allegations were essential in this indictment. See the authorities cited in the unusually able argument of counsel for appellee.                                    *Affirmed.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein set out, the action of the court below is declared correct.