THE STATE, DEFENDANT IN ERROR, v. ABRAHAM SAMAHA,
PLAINTIFF IN ERROR.

Argued February 19, 1918—Decided July 31, 1918.

1. In a prosecution for obtaining money, &c., by false pretence,
   under section 186 of the Crimes act (*Comp. Stat., p.* 1800), it
   is not essential that the person upon whom the cheat was
   practiced be the actual owner of the money or goods; it is
   sufficient if he had lawful possession of the same.

2. It is no effectual shield to an accused that the false pretence
   occurred in a contract of sale which could not lawfully be en-
   forced, because made on a Sunday.

3. It is highly improper for the trial judge to go into the jury room
   after the jury has retired to deliberate upon their verdict, in
   order to charge the jury upon a branch of the case which he had
   omitted in his charge in open court, and such action of the trial
   judge, if properly brought before the reviewing court by an
   assignment of error, would lead to the reversal of the judgment
   of conviction in a criminal case.

On error to the Atlantic County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the plaintiff in error, *John J. Crandall.*

For the defendant in error, *Charles S. Moore.*

The opinion of the court was delivered by

KALISCH, J.   The judgment of the court below is before
us on a strict writ of error and bills of exceptions.   The
defendant below was convicted of obtaining money under
false pretences upon an indictment based on section 186 of
the Crimes act (*Comp. Stat., p.* 1800), which statute pro-
vides, as follows: "Any person who knowingly or designedly
by color of any false token, counterfeit letter or writing, or
false pretense or pretenses, shall obtain from any person
money, wares, merchandise goods or chattels, or other valuable

thing, with intent to cheat or defraud any person, body politic or corporate of the same, shall be guilty of a misdemeanor."

The transaction in which the alleged false pretense was made, by the defendant, occurred on a Sunday. The defendant kept posted a placard in the show-window of his store, situate on the Boardwalk, in Atlantic City, advertising the sale of Kunzite stones. According to the testimony a Kunzite is a natural stone, lilac in color, and is classed among the semi-precious stones. Its value varies in proportion to its brilliancy, ranging from $2 to $50 a carat. The prosecutor entered the defendant's store to make a purchase and asked for a Kunzite stone. The defendant showed him a stone and represented it to be a genuine Kunzite worth $2 a carat, and during the negotiations of sale handed the prosecutor a printed description of its qualities. The stone weighed one carat and a half, and the prosecutor relying upon the defendant's representations that it was genuine Kunzite and of the value of $2 a carat, bought it and paid the defendant $3 therefor. The stone, subsequently, proved, upon test, to be common glass·artificially made to represent Kunzite, and was worth only a few cents.

First, it is argued that the transaction between the parties having taken place on Sunday "the defendant did not obtain title and proprietary right to the $3, and the complainant did not become the owner of the gem; and that in order to constitute the offence of obtaining money or goods under false pretences it must appear that the complainant was induced to part with property-actual ownership," and that this does not appear. The fallacy of this proposition is manifest. "Actual ownership" of the money or goods by the person upon whom the cheat is practiced is not essential. It is sufficient if he had lawful possession and dominion of the same. If the cheat had occurred on Monday the legal title to the money or goods parted with would not have passed. The fact, therefore, of the cheat being perpetrated on Sunday adds no force to the situation.

The unsoundness of the position taken by counsel of plaintiff in error, on the legal effect of the Sunday transaction upon

the cheat which was the inducement to the sale, is due, first, to the attempt to apply in a criminal prosecution legal rules, governing contracts made and completed on a Sunday, which are only applicable to civil actions *inter partes;* secondly, in assuming that the unlawful contract is the basis of the indictment, whereas the underlying foundation is the false pretence, with intent to cheat, and the carrying of that intent into execution, which the legislature has denounced as a misdemeanor, regardless of the day on which it takes place; thirdly, in utterly ignoring the prime fact that the offence committed is against the public, in the prosecution of which the state is the sole party in interest.

The second assignment of error is, that the court ruled that the evidence of the complaining witness supported the indictment. The legal propriety of this ruling is assailed by counsel of defendant upon two grounds: (1) that the complaining witness did not testify that he relied on the statements of defendant that the stone was Kunzite; (2) that the witness did not testify that he relied upon the verity of the correspondence of the terms used in Exhibit S-2, hereinafter referred to, with the language of any book whatever.

An examination of the record shows that this assignment is not well founded. It appears from the record that, after the complaining witness had finished his testimony, counsel of defendant made the following statement: "If your Honor please, under the indictment it shows that the thing that influenced him was the reason that the advertisement was not fulfilled, that the stone did not fulfill the description in the advertisement. Now the witness himself says that he was not influenced by it at all." A colloquy then ensued between court and counsel, but it nowhere appears that any motion was pending before the court calling for a ruling.

"The Court—I think, Mr. Crandall, that the testimony so far is in accord with the indictment. I can't see that there is any difference.

"Mr. Crandall—But he don't say he was influenced by this at all, and the indictment says that was his sole influence.

"[Motion overruled.]"

To this an exception was sealed by the court. What the overruled motion was does not appear, except from the language used by the court that the objection to the indictment came too late. If it was the overruling of a motion directed against the validity of the indictment, the action of the trial judge in disposing of the motion was proper. The Criminal Procedure act directs that such a motion must be made before the jury is sworn. If, on the other hand, the object of the motion was to take advantage of a variance between the proof and the allegations in the indictment, or, because of the insufficiency of the proof to sustain the indictment, then the proper course to pursue was to move for a direction of a verdict for the defendant at the close of the state's or the entire case, upon the grounds specified. But assuming that what was said by counsel during the colloquy with the court properly raised the question of the sufficiency and variance of the proof to sustain the indictment, an examination of the testimony shows that the motion was without merit, and, hence, was properly overruled.

The indictment sets out three separate and distinct false pretences, with intent to cheat, the proof of any one of which with the intent specified was sufficient to sustain the indictment and conviction thereon. The complaining witness testified that the defendant represented the stone to be Kunzite and of the value of $2 a carat and tested the stone with acid in the presence of the witness, and, immediately after the test made a remark to the witness to the effect that the stone showed the proper acid test; and when on cross-examination the witness was asked: "Well, then, the only thing that influenced you to part with your $3 was the representation that it was a Kunzite stone?" he replied, "Yes, and that——." In addition to the testimony of the complaining witness the state introduced ample testimony tending to establish a cheat perpetrated by the defendant.

The third assignment of error challenges the legal propriety of a comment made by the trial judge in his charge to the jury, but, as there was no general exception taken to the charge, nor any exception taken to the portion of the charge

complained of, as erroneous, the matter is not properly before us. We have, however, examined the portion of the charge complained of and find no legal impropriety in what the court said regarding the interest the state had in prosecuting offences of the kind alleged against the defendant. The fourth assignment of error is based upon the refusal of the court to charge the following request: "The court is asked to instruct the jury that it is important for the state to show that the bulletin in the indictment does not correspond with the text of the authority of the book that it was taken from. They have especially alleged that that is not like what the author authorized them to put in, and they have not introduced any evidence on that subject at all, therefore, I ask that the court will instruct the jury to that effect."

The bulletin referred to is the exhibit designated Exhibit S-2, and was the circular handed to the complaining witness while purchasing the stone. This circular contained a caption, as follows: "Copied from Prof. Kunz's book on Mineralogy." Then followed a florid description of the qualities of the Kunzite. A witness for the state testified that there was no work on mineralogy by Professor Kunz. There appears to be a work by Professor Kunz on "Curious Lore of Precious Stones." Counsel for defendant claimed to have such a book in his possession at the trial, but when challenged by the prosecutor of the pleas to point out the page in the book from which the bulletin was copied, he conceded that the circular was not an exact copy but was condensed and diluted. All this took place while the defendant's wife was on the witness stand, and she testified that she did not think the circular was copied from the book. It further appears, that the court refused to receive the book in evidence upon two grounds, first, that it was not a work on mineralogy, and, therefore, not the book from which the circular alleges it was copied; and, second, because there is no such matter in the book as is contained in the circular. Although counsel of defendant took an exception to the ruling of the court, no error was assigned upon this exception.

In this situation the defendant was not legally entitled to

an instruction to the jury that there was no evidence at all before the court on the subject of the circular. Nor does it appear that the defendant sustained any harm from the refusal of the court to tell the jury "that it was important for the state to show that the bulletin in the indictment does not correspond with the text of the authority of the book it was taken from" in face of the admission of counsel that it did not correspond with the text of the book he had in his possession, and the testimony on part of the state that Professor Kunz never wrote any book on mineralogy.

The fifth assignment of error has no exception to support it. There was no motion made to direct a verdict of acquittal upon the ground that the evidence did not tend to establish the offence charged in the indictment. The matter argued under this assignment, in the brief of counsel for defendant, relates to the following episode. After the jury retired from the bar, the court said: "I have overlooked charging the jury on reasonable doubt. Shall I have the jury brought back or go to the jury room."

Mr. Crandall—"You better go to the jury room, I guess." Whereupon the judge went to the jury room and charged the jury that the defendant was entitled to the benefit of a reasonable doubt. This irregularity is not properly before the court for review, under this assignment, as it is not embraced within the scope of error alleged therein. If advantage of the irregularity complained of was intended to be taken by counsel of defendant, it should have been made the subject of an assignment of error, which was not done. But since it appears on the face of the record that the judge did go into the jury room after the jury had retired thereto, to deliberate upon their verdict, it seems well for us to state here, that the action of the court was highly improper and irregular and is not palliated by the fact that what he said to the jury was favorable to the defendant; and were it not for the circumstance that the act of the court in going into the jury room was at the suggestion and with the consent of counsel of defendant, it might have resulted in vitiating the verdict of the jury.

The judgment is affirmed.