COHRAN *v.* STATE.

Feb. 1, 1954

No. 38975        51 Adv. S. 14        70 So. 2d 46

*Ethridge & Ethridge,* Oxford, for appellant.

770

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

McGehee, C. J.

The grand jury of Lafayette County jointly indicted the appellant Mattie Cohran and Veotis Smith for having sold and delivered unto Ross Brown and Barry Brown, whom the proof showed to constitute a partnership engaged in operating a store, gin and plantation, four alleged "forged and counterfeit writings," and for having obtained thereon from said Ross Brown and Barry Brown the sum of $54.09 of their money. The four alleged, forged and counterfeit writings are set forth in the indictment in the following words and figures:

772

"I.

Date     10/30     52

M     Bernees Jone

No.     $300                   Account

Reg. No..............     Clerk..............     Forwarded     52

                                             196
                                             194

                                             142

                                            ———

PLM                                     532

                                             3

                                             ———

ok                                      $15.96

II.

Date     10/30     52

M     Leeder Jomon

No.     $300                   Account

Reg. No..............     Clerk..............     Forwarded     52

                                             196

                                             184

                                             124

                                             ———

PLM                                     504

                                             3

                                             ———

ok                                      $15.12

### III.

Date     10/30     52

M     Edder Lee Mungg

No.     $300                    Account

Reg. No.................     Clerk................     Forwarded     52

                                                180

                                                196

                                                ―――――

PLM                                             376

                                                3

                                                ―――――

ok                                              $11.28

### IV.

Date     10/30     52

M     Vineger Jones  .

No.     $300                    Account

Reg. No.................     Clerk................     Forwarded     52

                                                196

                                                195

                                                ―――――

PLM                                             391

                                                3

                                                ―――――

ok                                              $11.73''

The alleged indictment further states that the accused "then and there willfully, unlawfully, falsely, fraudulently and feloniously representing the same to be engagements for the payment of money, unto Ross Brown and Barry Brown, them, the said Mattie Cohran and Veotis Smith, then and there well knowing the same to be forged and counterfeit, and with the willful, unlawful, false, fraudulent and felonious intent of them, the said Mattie Cohran and Veotis Smith, to have the same uttered, passed and delivered." The foregoing writings are said to be, according to the testimony, "cotton tickets," and purporting to have been issued for and on behalf of Ross Brown and Barry Brown for services rendered in picking cotton for them. It was further shown in the testimony that only P. C. Miller and D. C. Houston had authority to issue cotton tickets for and on behalf of the owners of the plantation, and that the practice followed was to give each cotton picker one of these tickets and that when he picked and delivered a sack full of cotton the number of pounds contained therein would be written on the ticket and at the end of the day the number of pounds contained in each sack so delivered would be added up and the amount of money earned would be noted on the ticket and that then the same would be signed by either P. C. Miller or D. C. Houston and that the ticket would then constitute evidence that the owners of the plantation owed the cotton picker the amount of money noted thereon.

However, it will be noted that these so-called cotton tickets as set forth in the face of the indictment do not purport to have been issued for or on behalf of Ross Brown and Barry Brown, nor for or on behalf of any other person, and that the same are not signed by either P. C. Miller or D. C. Houston, or by anyone else. They contain the initials PLM instead of PCM and as heretofore stated are not signed by anyone. In other words, the so-called forged and counterfeit writings do not on

their face constitute "engagements for the payment of money to anyone."

The indictment was drawn under Section 2172, Code of 1942, which reads as follows: "Every person who shall be convicted of having sold, exchanged, or delivered, for any consideration, any forged or counterfeited promissory note, check, bill, draft or other evidence of debt, or engagement for the payment of money, absolutely, or upon contingency, knowing the same to be forged or counterfeited, with the intent to have the same uttered or passed; or of having offered any such notes or other instruments for sale, exchange, or delivery, for any consideration, with the like knowledge and with the like intention, shall be guilty of forgery."

It will be noted that these so-called "forged and counterfeit writings" are neither "promissory notes, checks, bills, drafts, or other evidences of debt, or engagements for the payment of money, absolutely, or upon contingency, * * *.''

██ ██ In this situation it was necessary in order for the indictment to allege any offense whatsoever that the same should have alleged extrinsic facts showing how the writings could have been used as evidences of debt or engagements for the payment of money. The failure to allege such extrinsic facts in connection with the setting forth of the writings which were of no legal efficacy on their face, amounted to more than a formal or other defect that could have been cured by amendment in the event the indictment had been demurred to; the indictment fails to charge any offense whatsoever. Therefore, Section 2449, Code of 1942, does not preclude the appellant from raising the insufficiency of the indictment to charge an offense on this appeal, notwithstanding that the accused failed to demur to the same in the trial court, and the point that the indictment charges no offense for the reasons hereinbefore set forth is well taken.

It was also assigned for error the refusal of the trial court to grant the appellant an instruction to the effect that if the jury believed from the evidence in the case that there is a probability of the innocence of the accused, then there is a reasonable doubt as to her guilt and the jury must return a verdict of not guilty. ▮▮▮ This instruction should have been given and it was error to refuse the same, but in view of the other instructions granted unto the accused by which the jury was required to believe to a moral certainty and beyond a reasonable doubt that the accused was guilty before they could convict her, we would not reverse the case for the refusal of this instruction alone.

It is necessary, however, that the cause be reversed and remanded for further proceedings in view of the fact that the so-called forged and counterfeit writings amount to nothing on their face in the absence of the allegations of extrinsic facts showing in what manner the same could have any legal efficacy as constituting engagements for the payment of money.

Reversed and remanded.

All Justices concur except *Ethridge* and *Gillespie, JJ.*, who took no part.