246 So.2d 487 (1971)
A.F. WESTMORELAND
v.
STATE of Mississippi.
No. 46118.
Supreme Court of Mississippi.
January 25, 1971.
Rehearing Denied March 22, 1971.
Roy O. Parker, Tupelo, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and P. Roger Googe, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
*488 SMITH, Justice:
A.F. Westmoreland was convicted of the crime of false pretenses in the Circuit Court of Lee County and sentenced to serve a term of 7 years in the penitentiary, of which 2 1/2 years were suspended on good behavior. He appeals from that conviction and sentence.
*489 The indictment on which Westmoreland was tried, omitting the formal part, was as follows:
[B]eing then and there engaged in the business of selling farm machinery and equipment, feloniously and fraudulently represented to the Peoples Bank and Trust Company, Tupelo, Mississippi, a corporation, that a certain negotiable evidence of debt, to-wit: a conditional sales contract #39227, dated October 19, 1968, and purportedly signed by one D.J. "Doc" Kitchens, for the purchase of one Self-Propelled New Holland Combine, serial #341792, for the amount of $8950 was a valid contract, representing evidence of a bonafide purchase and a sale agreement between the said D.J. "Doc" Kitchens and the said A.F. Westmoreland, the said A.F. Westmoreland then and there well knowing the said conditional sales contract to be a false contract and not representing evidence of a valid purchase and sale transaction between the said A.F. Westmoreland and the said D.J. "Doc" Kitchens, and by virtue of this false representation and false pretense, that the said A.F. Westmoreland did, with intent to cheat and defraud the said Peoples Bank and Trust Company, sell the said conditional sales contract to the said Peoples Bank and Trust Company, and did thereby fraudulently obtain from the said Peoples Bank and Trust Company, Eight Thousand One Hundred and no/100 Dollars ($8100), good and lawful money of the United States, in violation of Section 2150 of the Mississippi Code contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
Neither the sufficiency nor the validity of the indictment was challenged in the trial court by demurrer, motion to quash or otherwise. Moreover, the motion for a new trial, made by Westmoreland following his conviction, did not assign, as a ground therefor, any defect or deficiency in the indictment.
It is now argued, however, that appellant's motion for a directed verdict of not guilty should have been sustained because: (1) The indictment failed to state the ownership of the $8100 obtained from the bank, and (2) the proof was insufficient to show a violation of Mississippi Code 1942 Annotated section 2150 (1956) as alleged in the indictment.
In support of the first of these contentions (that the indictment failed to show ownership of the money), appellant relies on Langford v. State, 239 Miss. 483, 123 So.2d 614 (1960), and the authorities therein cited.
In Langford, the appellant had been indicted for embezzling two cows, and the indictment omitted to state to whom the cows belonged. The Court, in concluding to reverse, said:
The appellant failed to demur to this indictment but he objected to the testimony as to ownership of the property, moved for a directed verdict and requested the Court to peremptorily instruct the jury to find him not guilty. There was also a motion for a new trial, due to the fact that the indictment in this case was void because it did not set out who owned the property alleged to be embezzled. (Id. at 486, 123 So.2d at 616.)
An indictment, of course, constitutes the "pleading" in a criminal case. Its office is to apprise the defendant of the charge against him in fair and intelligible language (1) in order that he may be able to prepare his defense, and (2) the charge must be laid with sufficient particularity of detail that it may form the basis of a plea of former jeopardy in any subsequent proceedings. There is, however, a trend away from the unnecessary redundancy and prolixity of former times.
The requirements of specificity with respect to allegation of ownership demand neither a deraignment of title nor a statement in "direct terms" showing perfect title where ownership of the money or *490 property obtained reasonably appears from the whole indictment and there is nothing in the indictment to support or suggest any other reasonable conclusion.
As stated by this Court in Neece v. State, 210 So.2d 657, 659 (Miss. 1968), in quoting with approval language used in State v. Dodenhoff, 88 Miss. 277, 40 So. 641 (1906):
Preserving to a defendant the right to be duly informed of the nature and cause of the accusation made against him, there ought not to be, in addition to this, insistence upon forms which are purely technical and surplusage. There are too many reversals by far on technical grounds. They ought to be had, in those cases where the defendant is shown by the testimony to be manifestly guilty, only upon objection having real and substantial merit. 88 Miss. at 288, 40 So. at 643.
In the case here, after identifying beyond question the false writing sold to the bank by appellant and by means of which, the indictment charges, he fraudulently obtained from the bank $8100, in money, the indictment continues:
[T]hat the said A.F. Westmoreland did, with intent to cheat and defraud the said Peoples Bank and Trust Company, sell the said conditional sales contract to the said Peoples Bank and Trust Company, and did thereby fraudulently obtain from the said Peoples Bank and Trust Company, Eight Thousand One Hundred and no/100 Dollars ($8100), good and lawful money of the United States, in violation of Section 2150 of the Mississippi Code. * * * (Emphasis added.).
In Cohen v. State, 101 Ga. App. 23, 27-28, 112 S.E.2d 672, 676 (1960), the Court of Appeals of Georgia, speaking to a contention that an indictment insufficiently set out ownership of funds obtained by false pretenses, said:
The indictment in this case alleges that `Clarence Orr paid the sum of $2,100' for the worthless stock, `whereby the said Clarence Orr was cheated and defrauded out of the sum of $2,100.' This is a sufficient allegation as to the ownership of the money under the authority of Scott v. State, 53 Ga. App. 61, 66, 185 S.E. 131.
In State v. Timmerman, 88 Utah 481, 487, 488, 55 P.2d 1320, 1323, concurring opinion, 56 P.2d 1354 (1936), the Utah Supreme Court in discussing the question, said:
Appellant, however, argued that the information does not state facts sufficient to constitute a public offense. We undertake to dispose of this question, as the same question may arise upon a new trial. The argument is based upon the contention that, in order to state the offense of obtaining money under false pretenses, the information must affirmatively and specifically allege the ownership of the property, unless there is some legal excuse stated in the indictment or information for omitting the allegation. There is a division of authority upon that question. We need cite only an illustrative case on each side of the controverted question. New Jersey holds squarely in the case of State v. Samaha, 92 N.J.Law 125, 104 A. 305, 306, that: "`Actual ownership' of the money or goods by the person upon whom the cheat is practiced is not essential. It is sufficient if he had lawful possession and dominion of the same." New Mexico and some other jurisdictions hold that an indictment or information for obtaining money by false pretenses is fatally defective unless the ownership of the property is directly and distinctly alleged. State v. Faggard, 25 N.M. 76, 177 P. 748. In the absence of statute the weight of authority, numerically, is with the rule announced by the case last above cited.
In a number of jurisdictions it is held that it is sufficient if it appears from the indictment or information to whom the property belonged. In the case of *491 People v. Skidmore, 123 Cal. 267, 55 P. 984, the situation was presented of one fraudulently obtaining a signature to a promissory note. It was there held that the facts showed the ownership of the note as fully as though there was a direct allegation in the pleading to that effect. In the instant case it is made to appear from the allegations of the information, although not directly alleged, who the owner of the check was. It is made to appear that the check was the property of the Ostler Candy Company with such certainty that no other implication could possibly arise. We think the information sufficiently alleges ownership, and being attacked on no other ground, the trial court did not err in admitting evidence over objection that the information did not state facts sufficient to constitute the offense charged.
In Midgley v. State, 29 Okl.Cr. 108, 232 P. 967 (1925), the Criminal Court of Appeals of Oklahoma, in rejecting a contention that an information charging false pretenses was insufficient because it failed "to allege the ownership" (of the property obtained), said:
Several assignments of error are presented for the reversal of this case, it being first contended that the amended information on which plaintiff in error was tried is insufficient, in that it fails to allege unequivocally the ownership of the property charged to have been obtained by the false pretenses set out as the basis of the amended information. Numerous authorities are cited to the effect that it is necessary to state to whom the property belonged. The amended information does not in direct terms aver the ownership of the property. This court in the case of Fuller v. Ter., 2 Okl.Cr. 86, 99 P. 1098, upheld an information in practically the same language as the information in this case.
It has been held in other jurisdictions that it is not a fatal defect to fail to allege the ownership in direct terms, if the indictment or information as a whole clearly discloses that fact. State v. Knowlton, 11 Wash. 512, 39 P. 966; Griggs v. United States, 9 Cir., 158 F. 572, 85 C.C.A. 596; State v. Balliet, 63 Kan. 707, 66 P. 1005; People v. Skidmore, 123 Cal. 267, 55 P. 984; State v. Boon, 49 N.C. 463; McClintock v. State, 98 Neb. 158, 152 N.W. 378; People v. Monroe, 64 App.Div. 130, 71 N.Y.S. 803. See, also, in this connection Douglas v. State, 15 Okl.Cr. 648, 179 P. 947; Bennett v. State, [21] Okl.Cr. [27,] 204 P. 462.
In Ireton v. State, 29 Okl.Cr. 266, 272, 233 P. 771, 773 (1925) the Court said in discussing a similar question:
It appears to us that an allegation that a false pretense is made to a person, and, believing and relying thereon, and by reason thereof, the person to whom the representation is made parts with money is a sufficient allegation as to the ownership. The mere fact that the legal ownership of the money was in some other person who might ultimately have to bear the loss would not be available to the person accused. In the instant case it certainly made no difference to the plaintiff in error whether the money paid over to him on the forged note and mortgage was the property of the First State Bank of Ardmore or of some other person. The transaction is described with sufficient certainty to identify the act, and, if the allegation as to the person injured be erroneous, it is not material, nor does it result in any miscarriage of justice.
We think the better reasoned view is that the allegations of an indictment for false pretenses, with respect to ownership of the money or property fraudulently obtained, may be sufficient without the use of direct words, where such ownership appears from a reasonable construction of the indictment as a whole.
*492 After careful consideration of the indictment in the present case we have concluded that in charging that Westmoreland,
[W]ith intent to cheat and defraud the said Peoples Bank and Trust Company, sell the said conditional sales contract to the said Peoples Bank and Trust Company, and did thereby fraudulently obtain from the said Peoples Bank and Trust Company, Eight Thousand One Hundred and no/100 Dollars ($8100), good and lawful money of the United States, in violation of Section 2150 of the Mississippi Code. * * * (Emphasis added).
sufficiently charged ownership by the Peoples Bank and Trust Company of the money obtained.
The second of appellant's contentions involving the indictment is that the proof failed to show a violation of Mississippi Code 1942 Annotated section 2150 (1956), referred to in the indictment, and for that reason he was entitled to a directed verdict of not guilty.
Mississippi Code 1942 Annotated section 2150 (1956) actually is a continuation of and dependent upon, section 2149, which precedes it. Section 2149 defines the crime of false pretenses, and section 2150 merely adds another grade of the same offense for which it provides a more severe penalty when it is committed with the additional elements there enumerated. These sections are as follows:
Section 2149.
Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained.
Section 2150.
If the false token by which any money, personal property, or valuable thing shall be obtained, as specified in the last section, be a promissory note, or other negotiable evidence of debt, purporting to have been issued by or under the authority of any person, banking company, or moneyed corporation not in existence, the person convicted of such cheat shall be punished by imprisonment in the penitentiary not exceeding seven years.
In 41 Am.Jur.2d Indictments and Informations section 88 (1968) it is stated:
Although there must be such specification of language as to bring the charge within the particular portion of the statute on which it is based, it has been held not necessary, where the offense is otherwise sufficiently particularized, to specify the exact section of the statute which is alleged to have been violated. In some jurisdictions, there are statutes providing that the statutory provision alleged to have been violated shall be set forth, and it has been held that a statute providing that it shall be sufficient to charge the defendant by using the name and article number of the offense committed is void, but citation of the wrong statute in an indictment or information will be treated as mere surplusage when objection thereto is first raised on appeal unless it appears that defendant was misled or prejudiced. (Emphasis added).
In 42 C.J.S. Indictments and Informations § 138 (1944), the rule is stated thus:
As a general rule, a misrecital of the statute does not avoid the indictment where the facts stated constitute an offense under any statute, especially where the objection is raised after plea of guilty. The misrecital may be rejected as surplusage, at least where the conclusion is generally as "contrary to the statute *493 in such case made and provided." However, the indictment may be invalidated by a material misrecital of the statute, where reference to the statute must be considered for the purpose of supplying an insufficient description of the offense, and the effect of the erroneous citation is to mislead or fail to inform accused fully and clearly of the charge he has to meet.
In Harper v. United States, 27 F.2d 77, 79 (8th Cir.1928), the Court said:
The statement that the facts violate a certain section of the statute is nothing more than the pleader's conclusion, which may or may not be correct, and neither adds nor detracts from the allegations.
In White v. State, 169 Miss. 332, 338, 153 So. 387, 388 (1934), in rejecting a contention that an indictment was defective because it contained an incorrect citation of a statute alleged to have been violated, this Court said:
It is also contended that the indictment is defective because it concludes with the words, "contrary to section 987, Mississippi Code of 1930, and against the peace and dignity of the State of Mississippi." This reference to section 987, Code 1930, is manifestly erroneous, as that section merely provides the penalty that may be imposed upon a conviction for murder. However, this reference to the statute was mere surplusage in the indictment, and the appellant could not have been prejudiced by this erroneous reference thereto. Smith v. State, 58 Miss. 867.
In the case now before us the attention of the trial court was not drawn to this matter in any way. The question was not raised either by demurrer, motion to quash, or in appellant's motion for a new trial made following his conviction. As in other pleadings, the allegations of fact control as against legal conclusions of the pleader. We have concluded that the indictment in this case sufficiently charged facts which constituted the crime of false pretenses as defined by Mississippi Code 1942 Annotated section 2149 (1956). The proof overwhelmingly supported the charge against appellant, as laid in the indictment. However, it was error to impose sentence under the provisions of Mississippi Code 1942 Annotated section 2150 (1956), since the facts charged in the indictment and shown by the proof do not show that the commission of the offense was accompanied by the circumstances necessary to bring it within that section.
Other matters assigned as error have been examined and considered and are without merit.
The conviction of appellant of the crime of false pretenses (as defined in Mississippi Code 1942 Annotated section 2149 [1956]) is affirmed, the sentence imposed under section 2150 is set aside, and the case is remanded for imposition of sentence as provided by section 2149.
Conviction of appellant of the crime of false pretenses (as defined in Mississippi Code 1942 Annotated section 2149 [1956]) affirmed, the sentence imposed under section 2150 set aside, and the case remanded for imposition of sentence as provided by section 2149.
GILLESPIE, P.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.

ON PETITION FOR REHEARING
INZER, Justice:
A majority of the justices of this Court are of the opinion that the Petition for Rehearing in this case should be denied, and it is therefore, denied. However, Justices Rodgers, Brady, Patterson and the writer are of the opinion that it should be granted and dissent from the denial of the petition, for the reason that the decision in this case fails to follow the plain holding in several cases heretofore decided by this Court.
*494 Appellant in his petition for a rehearing correctly points out that in deciding this case, we did not follow the case law of this state with respect to the allegation of direct ownership of property alleged to have been obtained by the appellant from the bank. In Hampton v. State, 99 Miss. 176, 54 So. 722 (1911), this Court said:
The indictment charges the appellant with embezzling the funds of the American Express Company, "which is duly incorporated," while the evidence for the state showed that the American Express Company was not a corporation, but a partnership. It is contended for the appellant that this was a material variance between the indictment and proof. This question was properly raised in the court below by motion to exclude the testimony for the state, which was overruled, by a request for a peremptory instruction to the jury to return a verdict of not guilty, which was denied, and by the motion for a new trial. There was no such offense at common law as embezzlement; it is made such by statute; it is a statutory larceny. The rules of law in cases of larceny, with reference to alleging and proving the ownership of the property charged to have been stolen, apply with equal force to the crimes of embezzlement, false pretenses, and other kindred offenses. 2 Bishop's New Criminal Procedure, § 320; State v. Tatum [96 Miss. 430], 50 So. 490. (Emphasis added) (99 Miss. at 183, 54 So. at 723).
In State v. Hubanks, 99 Miss. 775, 56 So. 163 (1911), the trial court sustained a demurrer to the indictment which, omitting the formal parts, stated:
* * * unlawfully and feloniously devising and designedly intending to cheat and defraud the International Order of Twelve of Knights and Daughters of Tabor, a corporation, and one Isaac Cook and one Manuel Potts having then and there a certain life insurance policy heretofore issued by the said corporation upon the life of one Piley Cook, which said policy was then in full force and effect and binding upon the said corporation and the said Piley Cook, and by which said policy the said corporation agreed and became bound to pay to the beneficiaries named therein, to-wit, Isaac Cook and Manuel Potts, three hundred dollars in money upon the death of the said Piley Cook, a more particular description of the said insurance policy being to the grand jurors unknown, did then and there unlawfully, feloniously, falsely, designedly, and fraudulently pretend to the said corporation that the said policy was the property of the said Hubanks, and that the said Hubanks was the beneficiary named in the said policy, and by virtue of a false token in writing, called a proof of death, did then and there unlawfully, feloniously, falsely, designedly, and fraudulently pretend to the said corporation that the said Piley Cook was dead and the said sum of three hundred dollars was due and payable by the said corporation to the said Hubanks by reason of the terms of the said policy and of the death of the said Piley Cook and of the said proof of loss, a more particular description of the said proof of loss being to the grand jurors unknown, by means of which said false pretenses they, the said Hattie Clarke, John Hubanks, and J.E. Walker, did then and there unlawfully, feloniously, falsely, designedly, and fraudulently obtain of and from the said corporation three hundred dollars in money, of the value of three hundred dollars; whereas, in truth and in fact, the said policy was not the property of the said Hubanks, and the said Hubanks was not the beneficiary named in the said policy, and the said Piley Cook was not dead, but was then living, and the said sum of three hundred dollars was not due and payable by the said corportaion to the said Hubanks by reason of the terms of said policy, and by reason of the death of the said Piley Cook, and by reason of said proof of loss, all of which they, the said Hattie Clarke, John Hubanks, and J.E. *495 Walker, then and there well knew * * *. (Emphasis added). (99 Miss. at 775, 776, and 777, 56 So. at 164).
This Court held that the indictment failed to charge the ownership of the money obtained from the corporation and that it was defective for this reason.
In comparing what is said in the foregoing indictment concerning the ownership of the property, we find no material difference in these allegations than those contained in the indictment in the case before us. It has the following charge relative to the ownership of the property.
[T]hat the said A.F. Westmoreland did, with intent to cheat and defraud the said Peoples Bank and Trust Company, sell the said conditional sales contract to the said Peoples Bank and Trust Company, and did thereby fraudulently obtain from the said Peoples Bank and Trust Company, Eight Thousand One Hundred and No/100 Dollars ($8,100.00), good and lawful money of the United States, in violation of Section 2150 of the Mississippi Code * * *. (Emphasis added).
If the indictment in Hubanks was defective for failure to charge the ownership of the money, the indictment in the present case is certainly defective. It is clear that this Court held in Hubanks that the ownership of the money or property alleged to have been obtained by false pretense had to be directly charged and could not be inferred by a construction of the indictment as a whole.
In Langford v. State, 239 Miss. 483, 123 So.2d 614 (1960), the indictment charged, omitting the formal parts:
"That Albert Langford late of the County aforesaid, on or before the 5th day of October and in the year of our Lord, 1959, in the County and State aforesaid, and within the jurisdiction of this Court, being then and there the manager and agent of Ben Walker, Sr. and Ben Walker, Jr.'s cattle farm, did then and there by virtue of his employment as such manager and agent have under his care two red white-face Hereford heifers, one weighing approximately 500 pounds of the value of $125.00 and the other weighing approximately 450 pounds of the value of $115.00, good and lawful money of the United States of America, both said heifers having a V notch and tatoo marks in ear of each heifer, a better description being to the grand jurors unknown, said 2 heifers being of the aggregate value of approximately $240.00, good and lawful money of the United States of America, which said property had come into his possession and had been intrusted to his care and keeping by virtue of his said employment as such manager and agent as aforesaid, and did afterwards then and there, without the consent of said Ben Walker, Sr. or said Ben Walker, Jr. wilfully, unlawfully, fraudulently and feloniously embezzled said property and fraudulently and feloniously convert same to his own use and benefit." (Emphasis added). (239 Miss. at 485, 486, 123 So.2d at 615).
This Court said in regard to this indictment:
In this case there is no statement at all in the indictment as to the ownership of the property. In Herron v. State, 118 Miss. 420, 79 So. 289, it was held: "Since the omitted allegation goes to the very essence of the offense attempted to be charged the omission thereof was not waived by appellant's failure to demur thereto." We have numerous cases in Mississippi holding to this effect, Cook v. State, 72 Miss. 517, 17 So. 228; Hughes v. State, 74 Miss. 368, 20 So. 838; Taylor v. State, 74 Miss. 544, 21 So. 129; McGaha v. State, 173 Miss. 829, 163 So. 442; Robinson v. State, 180 Miss. 774, 178 So. 588; Crosby v. State, 191 Miss. 173, 2 So.2d 813; Kelly v. State, 204 Miss. 79, 36 So.2d 925; Love v. State, 211 Miss. 606, 52 So.2d 470; Cohran v. State, 219 Miss. 767, 70 So.2d 46. (239 Miss. at 487, 488, 123 So.2d at 616).
*496 We are unable to see any material difference in the charge in the foregoing indictment relative to the ownership of the property and the charge in the indictment in the present case. We affirmed the decision in Langford in Meyer(s) v. State, 193 So.2d 728 (Miss. 1967), by saying:
This is an appeal from a judgment of conviction of the crime of embezzlement. In all essential respects the indictment is in the exact language of the indictment in Langford v. State, 239 Miss. 483, 123 So.2d 614 (1960). In that case this Court reversed because the indictment did not set out who owned the property allegedly embezzled. In this case, as in Langford, the defendant did not demur to the indictment. In Langford the Court held that the failure of the indictment to name the owner of the property allegedly embezzled was not a formal defect that could be corrected by amendment under Mississippi Code Annotated section 2449 (1956) and that Langford had not waived the defect by failing to demur. Unless we overrule Langford the present case must be reversed.

* * * * * *
Because of the defect in the indictment in failing to name the owner of the property allegedly embezzled, this case is reversed and remanded. The defendant will be held under the same bond to await further action of the grand jury. (Emphasis added). (193 So.2d at 729).
We have departed from Langford without overruling it, as we stated must be done.
The opinion in this case seems to indicate that the appellant waived his right to challenge the validity of the indictment by failure to raise this question in the trial court. Appellant made a motion for a directed verdict after the state rested, and he requested a peremptory instruction directing the jury to find him not guilty after both sides had rested. He also filed a motion for a new trial, which was overruled. It is true he did not specifically point out to the trial court the fatal defect in the indictment, but this was not necessary. In Crosby v. State, 191 Miss. 173, 2 So.2d 813 (1941), the appellant was convicted on the charge of having burglarized "a certain building commonly called a store building in which there was then and there kept for use and safety money, tobacco and other articles of merchandise and other valuable things of Mrs. Thelma Hicks [there situated]." The appellant failed to demur to the indictment but requested the court to peremptorily instruct the jury to find him not guilty at the conclusion of all the evidence. There was also a motion for a new trial, but the insufficiency of the indictment to charge the ownership of the building alleged to have been burglarized was raised for the first time in this Court. This is the same situation as we have in the case before us. This Court held that the failure to properly charge the ownership of the building went to the very essence of the offense charged, and the fatal defect was not waived by the appellant's failure to demur to the indictment. In conclusion this Court stated:
The proof disclosed in the case at bar that the store building alleged to have been burglarized is located in the Town of Seminary in Covington County, but the indictment, not alleging the ownership thereof as aforesaid, merely state that the building was "a certain store building" in Covington County, and the indictment not being in conformity with the law, the purpose of which is to enable the defendant to make his defense of former acquittal or conviction on the record in a subsequent trial for the same offense as was held to be necessary in the Cooksey case, supra, it is fatally defective and the cause must be reversed and remanded. (Emphasis added). (191 Miss. at 178, 2 So.2d at 815).
Since the failure to properly charge the ownership of the money obtained from the bank is an essential element of the offense attempted to be charged against the appellant, he could raise this question for the first time in this Court. The reason for this rule is that a person being tried for a crime *497 is presumed to be innocent until he has been convicted after being charged by an indictment which charges him with all the essential elements of the offense for which he is being tried. When an indictment fails to charge an essential element of the offense, its validity may be questioned for the first time in this Court.
We are unable to agree that the indictment in a criminal case is a mere "pleading". Article III, Mississippi Constitution § 27 (1890) requires an indictment before any person can be prosecuted on a felony charge. The indictment is a written accusation or a charge against one or more persons of a crime, and it must be presented on oath by a legally constituted grand jury. In order for an indictment to be valid, all the formal prerequisites must be complied with, including all the constituent elements of the crime attempted to be charged. Under the law of this state, the failure to properly charge any essential element of the crime is a fatal defect and cannot be amended except by consent of the grand jury returning the indictment. The opinion in this case recognizes that the ownership of property obtained by false pretense must be charged, but what it fails to recognize is that under the former decisions of this Court it must be directly charged. Furthermore, this is a general rule with few exceptions. In 41 Am.Jur.2d, Indictments and Presentment § 146 (1968), it is said:
Ownership.
Questions as to the necessity and sufficiency of an allegation of ownership of property which constitutes the subject matter of an offense are usually so specific in their nature that they cannot logically be dissociated, even in generalized form, from the specific offense in respect of which they arise. In all such cases they are fully considered in the topic treating of the specific offense. A few rules of more or less general application are deducible from the specific authorities, which are proper for consideration here. Thus, it is the general rule that in the absence of statute, the ownership of property involved in the commission of an offense must be directly alleged where such ownership is an essential element of the offense charged, or where it is necessary to apprise the accused of the nature and cause of the accusation against him. However, unnecessary or impossible specification of ownership is not required. (Emphasis added).
We are not in accord with the statement in the majority opinion that the recent view that the allegations of an indictment for false pretense with respect to ownership of money or property fraudulently obtained may be sufficiently charged without direct words, where such ownership appears from a reasonable construction of the indictment as a whole, is the correct view. One of the reasons why the ownership of the property or money should be directly charged is so it may form the basis of a plea of former jeopardy in any subsequent proceeding. It is obvious in this case that appellant could be indicted again under the same statement of facts set out in the indictment with an additional charge that the $8,100 obtained from the bank was the property of someone else, and if the proof sustained such a charge, his present conviction would not constitute former jeopardy under our law.
This Court follows the doctrine of stare decisis and under this doctrine we follow our former decisions, unless such decisions are manifestly wrong and mischievous in their results. If the decisions in Hubanks, Langford and Meyer(s), supra, are manifestly wrong and mischievous, which they are not, we should say so and overrule them, otherwise we should adhere to them and sustain this petition for a rehearing.
Appellant in making his defense to the charge against him was entitled to rely upon the foregoing decisions, and our failure to adhere to these decisions deprives him of a valuable right. It is our considered opinion that this Court was in error in failing to reverse this case and for the reasons *498 stated the petition for rehearing should be granted.
Petition for rehearing denied.
ETHRIDGE, C.J., GILLESPIE, P.J., and SMITH, ROBERTSON and HARPER, JJ., concur.
RODGERS, BRADY, PATTERSON and INZER, JJ., dissent.