O. O. HAMPTON *v.* STATE.

[54 South. 722.]

1. CRIMINAL LAW. *Indictment. Ownership of property. Embezzlement. Evidence. Variance.*

The rules of law in cases of larceny, with reference to alleging and proving the ownership of the property charged to have been stolen, apply with equal force to the crimes of embezzlement, false pretenses and other kindred offenses.

2. EMBEZZLEMENT. *Evidence. Variance.*

The "American Express Company, a corporation," is a materially different concern from the American Express Company, a partnership, and an indictment for embezzling the funds of one cannot be sustained by proof that the funds belong to the other.

3. EVIDENCE. *Admissibility.*

In a prosecution for embezzlement, testimony of defendant's assistant in an express office, that four or five months before the office was set on fire and a shortage discovered, while he and defendant were on their way to the depot to meet a train, the appellant told him he was expecting the supervising agent of the express company, and handed witness a note in an envelope and instructed him to return to the office, which witness did and if he (the appellant) telephoned him that the superior agent had come, to deliver the envelope to the Farmers Bank and take what the bank gave him and put it in the "pony safe," that when the train came, he received a message, but not from appellant, but the depot agent, that the supervising agent of the express company had come; that thereupon he delivered the envelope to the bank and got from it a package marked on the back, four hundred and ninety dollars, which he put in the safe,

and which was there when the supervising agent came, was not subject to the objection that it related to another crime, since it tended to prove the specific crime.

4. HEARSAY. *Same.*

Such testimony was not objectionable as being hearsay evidence, as it was competent to show upon what information witness acted.

5. WITNESSES. *Harmless error.*

In a prosecution for embezzlement from an express company it was harmless error for the court to refuse to allow defendant on cross examination to ask the superintendent of the express company, for the purpose of affecting his credibility, if he had not made an offer to abandon the prosecution if defendant's shortage was made good, where his evidence as to the material facts, was not controverted.

6. INSTRUCTIONS.

The court should not give instructions which are confusing and misleading.

7. SAME. *Invading province of the jury. Code 1906, section 1136.*

In a prosecution for embezzlement an instruction that the mere failure on the part of defendant, without explanation, to turn over to his employer the funds in his hands belonging to it, established guilt, is erroneous, since under Code 1906, section 1136, the question whether such failure was sufficient to show guilt was for the jury.

8. BURDEN OF PROOF.

The burden of proof never shifts from the state in a criminal case.

APPEAL from the circuit court of Lafayette county.
HON. W. A. ROANE, Judge.

O. O. Hampton was convicted of embezzlement and appeals.

The facts are fully stated in the opinion of the court.

*Cassedy & Butler,* for appellant.

We say that the motion to direct a verdict for appellant because of the fact of the American Express Company being a corporation should have been sustained. Certainly this is true unless the district attorney should have availed himself of the right to amend the indict-

ment to conform to the proof unless all precedent shall be ignored; the substantial rights of one charged of a serious offense shall not be lost sight of in the sometimes desperate effort on the part of prosecuting counsel to secure an unrighteous verdict. It will be noted that the indictment is explicit in its charges of embezzlement from the American Express Company, a corporation, whereas from the proof by the testimony of the state witness himself, it is conclusively established that the American Express Company is not a corporation, but to the contrary a partnership.

The crimes of larceny, burglary, robbery, false pretenses, embezzlement, receiving stolen goods, etc., are all frauds and cheats and the same essential elements exist in each. They are governed by the same rules of practice and procedure, founded upon one and the same base. Mr. Bishop says that the rule as to ownership of property is the same in arson, burglary, cheats, false pretenses, conspiracy, embezzlement, malicious mischief, forgery, receiving stolen goods, robbery and larceny. 2 Bishop Crim. Proced., 719, also 2 Bishop Crim. Proced., 36, 137, 173, 211-233, 320, 424, 983 and 1006.

He further lays the rule down at section 723 that "where the goods belong to the business firm or other joint owners, the ownership must be laid in all. Each name should be given in full, simply the partnership name, for example, not sufficing." Now embezzlement is simply a statutory larceny. (2 Bishop on Crim. Law 318.)

In 2 Bishop Crim. Proced., at 320 it is said, "In the absence therefore of the legislative interposition the rule for the description of embezzled property is on the authorities that it shall be the same as on an indictment for the larceny thereof at the common law. The ownership must be alleged with the same accuracy and after the same rules as in the indictment for common law larceny." *Tatum* v. *State,* 50 So. 490; McLain on Crim.

Law, vol. 1, § 707; 2 Bishop on Crim. Proced., 718; *James* v. *State,* 77 Miss. 370; *McGuire* v. *State,* 91 Miss 151; *Froman* v. *State,* 95 Miss. 77; *Richburger* v. *State,* 90. Miss. 806.

We say the court erred in permitting witness Hunter to testify to the conversation between him and the appellant and between him and the depot agent and his acts in reference to calling at the bank and getting a package of money and depositing it in the pony safe. *Molineaux* v. *People,* 62 L. R. A. 194; *Herman* v. *State,* 75 Miss. 340; *Raines* v. *State,* 81 Miss. 489.

The fifth instruction in this case is absolutely vicious. It is as follows: "The court charges the jury for the state that if they 'believe from the testimony in this case beyond a reasonable doubt that the defendant had collected certain sums of moneys, no matter what amount, which was then and there the property of the American Express Company and that said moneys were never given to or remitted to the said company then it devolves upon the defendant to give a reasonable explanation of what became of said moneys, and unless said explanation creates in the minds of the jury, a reasonable doubt of the defendant's guilt, then it is the duty of the jury to convict the defendant, provided they believe from all the testimony in the case beyond a reasonable doubt that the defendant is guilty as charged in the indictment.'" This instruction is erroneous for several reasons. In the first place, it predicates embezzlement absolutely upon the mere failure to pay over whereas according to every definition of embezzlement laid down in the law books, the crime consists of something more than this. There must be a fraudulent appropriation, a fraudulent secretion, a fraudulent concealment, a fraudulent conversion or a fraudulent making way with in order to constitute the crime. To constitute a crime the appropriation of the property must be made with the

same intent to deprive the owner with which the taking must be done to constitute larceny at common law.

It is erroneous, however, for another reason. It is a contradiction in terms. Thus the jury is told that unless the reasonable explanation creates a reasonable doubt of guilt then it is the duty of the jury to convict, provided they believe from all the testimony in the case beyond a reasonable doubt that the defendant is guilty. What does this mean? If the explanation renders guilt doubtful then it is a mental and moral impossibility for all the testimony to place guilt beyond a reasonable doubt. This feature of the instruction was condemned in *Pollard* v. *State,* 53 Miss. 410.

*Kimbrough* and *Slough,* for appellant.

An indictment for embezzlement must show the ownership of the property alleged to have been embezzled with the same particularity as in a prosecution for larceny and unless the proof supports the allegation of ownership in an indictment for embezzlement there can be no valid conviction. *Polkinghouse* v. *State* (Miss. 1890), 7 So. 347, also 68 Miss. 348.

The identity of the owner of the property in embezzlement is very material and should be properly laid and proven. Clarks Criminal Procedure, page 229 at top of page. Also, 22 S. W. 955 (Ark.), 58 Ark. 17.

Since it is alleged in the indictment in this case that the owner of the property alleged to have been embezzled was a corporation, it becomes necessary to prove the averment "as descriptive of the offense charged." See *Tyler* v. *State,* 69 Miss. 395; *John, a slave,* v. *State,* 24 Miss. 569, and *Dick* v. *State,* 30 Miss. 631.

The court should not have given the instructions as asked by the state.

The court should have sustained the motion to exclude the testimony and discharge the defendant because of the fatal variance between the indictment and

the proof. Also the court should have sustained the motion in arrest of judgment, and motion for new trial, and discharged the defendant for the reasons set out therein.

*Carl Fox,* assistant attorney-general, for appellee.

It is contended by counsel for appellant that this case should be reversed because there was a variance between the indictment and the proof, the indictment alleging that the money embezzled was the property of the American Express Company, a corporation, and the proof being that it was a joint stock company or a partnership. Under section 1508 of the Code of 1906, this indictment could have been amended to accord with the proof. If appellant was not prejudiced by the failure to amend the indictment then this case ought not to be reversed on that ground. No continuance was asked for, no suggestion made that defendant was in any way prejudiced by the variance.

In *Richberger v. State,* 44 So. 772, it was held, as is correctly stated in the syllabus, that "where an indictment is amended without the entry of the authorizing order on the court's minutes as required by Code of 1906, section 1509, the court, on objection being made, even as late as a motion for a new trial, is authorized to make the entry *nunc pro tunc.*"

In the case of *Peebles v. State,* 55 Miss. 434, it was held that if the defendant does not ask for a continuance upon the amendment of the indictment, he cannot afterwards object that he was surprised and prejudiced in his defense thereby.

The only other contention made here which I desire to answer is that the fifth instruction granted the state is erroneous. I do not think the instruction is correct. However, section 1136, under which the indictment was drawn, provides that if any agent, etc., "shall embezzle or fraudulently secrete, conceal or convert to his own

use or make way with or secrete with intent to embezzle or convert to his own use any goods, etc., . . . he shall be guilty of embezzlement.'' Now, the defendant admitted having the money which he was charged with embezzling; he admitted that he did not turn it over when demanded. His defense and his only defense was that the money had been robbed was not true, then he had concealed or had made way with the móney. I frankly confess that I have no faith in that argument. However, if the court can say, under the peculiar facts of this case, that defendant was not prejudiced, then the case ought not to be reversed because of this instruction.

ANDERSON, J., delivered the opinion of the court.

The appellant, Hampton, was convicted of embezzlement, and sentenced to the penitentiary for three years, from which judgment he appeals to this court.

He is charged with embezzling the funds of the American Express Company. At the time of the alleged embezzlement he had been the agent of that company at Oxford about three years. At about four o'clock on the morning of July 18, 1909, the office of the express company, where appellant was sleeping, was discovered on fire. It was broken into by some parties for the purpose of extinguishing the fire. On entering, the appellant was found lying in bed, and was picked up and carried out. The office was burning from the inside. On investigation it was found that the appellant was short with the express company eleven hundred dollars and seventy-nine cents. This shortage he admitted, but claimed that just previous to the fire the office was entered by some unknown person or persons, who struck him a blow which. rendered him senseless, and tied him to his bed with a rope, and robbed him of the funds of the company, which he had in his possession in a shot sack under his pillow. The contention of the state is that the appellant was not robbed, that he set fire to the

office himself, that he was not tied in bed, and that his purpose in setting fire to the office and claiming that he had been robbed was to cover up the crime which he had committed.

The indictment charges the appellant with embezzling the funds of the American Express Company, "which is duly incorporated," while the evidence for the state showed that the American Express Company was not a corporation, but a partnership. It is contended for the appellant that this was a material variance between the indictment and proof. This question was properly raised in the court below by motion to exclude the testimony for the state, which was overruled, by a request for a peremptory instruction to the jury to return a verdict of not guilty, which was denied, and by the motion for a new trial. There was no such offense at common law as embezzlement; it is made such by statute; it is a statutory larceny. The rules of law in cases of larceny, with reference to alleging and proving the ownership of the property charged to have been stolen, apply with equal force to the crimes of embezzlement, false pretenses, and other kindred offenses. 2 Bishop's New Criminal Procedure, § 320; *State* v. *Tatum,* 50 South. 490. The "American Express Company, a corporation," is a materially different concern from the "American Express Company, a partnership," and an indictment for embezzling the funds of one cannot be sustained by proof that the funds belong to the other.

The state's witness, Hunter, who was appellant's assistant in the express office, testified that, four or five months before the office was set on fire and the shortage discovered, while he and the appellant were on their way to the depot to meet a train, the appellant told him he was expecting McGuirck, who was an agent of the express company having supervision of his and other offices of the company, and handed witness a note in an envelope, and instructed him to return to the office, which

witness did, and, if he (the appellant) telephoned him
McGuirck had come, to deliver the envelope to the Far-
mers' Bank, and take what the bank gave him, and put
it in the "pony safe;" that when the train came he re-
ceived a message, not from appellant, but from the depot
agent, Granberry, that McGuirck had come; that there-
upon he delivered the envelope to the bank, and got from
it a package marked on the back, "four hundred and
ninety dollars," which he put in the safe, and which was
there when McGuirck came. The testimony was ad-
mitted over the objection of appellant. There are two
grounds for objection: First, that it tended to prove
an entirely separate and distinct embezzlement from the
one for which appellant was being tried; second, that the
information given the witness by the depot agent was
hearsay. It is clear that the testimony was not offered
to prove another crime than that for which appellant was
tried. The purpose was to prove the specific crime laid
in the indictment. The testimony of Kettering, the su-
perintendent of the express company, tended to show
that the shortage that was discovered on July 18th, after
the fire, was the result of peculations by the appellant
covering a period of several months prior thereto, prob-
ably running as far back as the latter part of 1908. For
this purpose it was clearly competent. The information
received by the witness Hunter from the depot agent is
not within the rule against hearsay testimony. It was
competent to show the information on which Hunter
acted, and not for the purpose of establishing a material
fact. It was immaterial how Hunter got the information.
The material fact proven was that McGuirck did come,
which resulted in the four hundred and ninety dollars
being placed in the pony safe in accordance with appel-
lant's instructions.

On cross-examination of Kettering, the appellant
sought to show, which the court refused to permit, that
he (Kettering) had offered to abandon the prosecution

of appellant if the shortgage was made good. It is claimed that this testimony was material, as affecting the credibility of the witness. The question of the credibility of witnesses is a broad field of inquiry. It is difficult to lay down any rule prescribing the limitations of such an investigation. This testimony was competent; but, in view of the fact that Kettering's evidence as to the material facts was not controverted, the refusal of the court to admit it was harmless. What reason could there be for showing Kettering's bias and interest, when the substantial facts to which he testified were admitted?

The giving of the fifth instruction for the state is assigned as error. That instruction is in this language: "The court charges the jury, for the state, that if they believe from the testimony in this case beyond a reasonable doubt that the defendant had collected certain sums of money, no matter what amount, which was then and there the property of the American Express Company, and that said money was never given to or remitted to the said company, then it devolves upon the defendant to give a reasonable explanation of what became of said money; and unless said explanation creates in the minds of the jury a reasonable doubt of defendant's guilt, then it is the duty of the jury to convict the defendant, provided they believe from all of the testimony in the case beyond a reasonable doubt that the defendant is guilty as charged in the indictment."

The instruction is plainly erroneous for two reasons: First, it is confusing and misleading. It is difficult to understand what idea the court intended to convey to the minds of the jury. In one clause the jury were informed that a mere failure on the part of appellant, without explanation, to turn over to the express company the funds in his hands belonging to it established his guilt; and in another clause they were informed, by way of proviso, that the testimony should show this guilt beyond a reasonable doubt. And, second, the appellant was in-

dicted under section 1136, Code of 1906. Under the statute it was a question for the jury whether the mere failure by the appellant to turn over to the express company the funds in his hands was sufficient to show guilt. This instruction fixes such failure, without explanation, as conclusive of guilt, and shifts the burden to the defendant to show a reasonable excuse for such failure. The burden of proof never shifts in a criminal case. *Ford* v. *State,* 73 Miss. 734, 19 South. 665, 35 L. R. A. 117; *Herman* v. *State,* 75 Miss. 340, 22 South. 873; *Brandon* v. *State,* 75 Miss. 905, 23 South. 517; *Blalock* v. *State,* 79 Miss. 518, 31 South. 105; *Raines* v. *State,* 81 Miss. 489, 33 South. 19.    *Reversed and remanded.*