386 So.2d 1102 (1980)
Charles A. CARTER
v.
STATE of Mississippi.
No. 51991.
Supreme Court of Mississippi.
August 13, 1980.
*1103 John R. Poole, William Goodman, Jackson, for appellant.
Bill Allain, Atty. Gen., by Susan L. Runnels, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and WALKER and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant, Charles A. Carter, appeals from his conviction of false pretense in the Circuit Court of the First Judicial District of Hinds County. The indictment was issued on July 7, 1978, charging appellant with the false pretense that allegedly occurred in June, 1972. The indictment was prepared and rendered under Mississippi Code Annotated section 97-19-39 (1972), which reads as follows:
Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained.
Appellant assigns several alleged errors resulting in his conviction. We need only to consider whether or not the evidence presented by the State was sufficient to come within the provisions of the above statute. We find that the State clearly and without any doubt failed to present a case under the charge in the indictment, and it follows that the cause should be reversed and appellant discharged.
At the outset, and as hereinafter discussed, we point out that in the entire transaction in question Bankers Trust Savings & Loan Association lost nothing, but conversely, it gained. The appellant gained nothing.
At all times during the period in question appellant was chairman of the board of Bankers Trust Company, the parent corporation of Bankers Trust Savings & Loan Association, of Jackson, Mississippi. He was an attorney and a certified public accountant. In addition to being the head of a law firm, he had other business interests. The entire matter began when appellant entered into a business transaction with one D.C. Taylor of Greenville, Texas. This relationship started in the first part of 1971. Taylor owned a motel in Greenville and other Texas property. The motel was in serious financial difficulty. Appellant, having previously known Taylor, and at Taylor's request, agreed to personally assist Taylor in his financial trouble in Texas. Neither Bankers Trust nor the Savings & Loan Association had any involvement whatever in that transaction. In fact, neither company was qualified legally to do any business in the State of Texas. Appellant loaned Taylor a considerable amount of his admittedly personal funds. The motel was saved because of appellant's assistance to his acquaintance, Taylor. In addition to financial assistance, appellant assisted in accounting and operating procedures involving the motel. Good business practice dictated that appellant secure his personal investment in the Texas property. Therefore, he requested and received security instruments to protect his loan to Taylor. It so happened that at the time Taylor owned some mostly undeveloped property near Columbus, Mississippi, known as Eastwood Hills Subdivision. In securing his personal involvement with Taylor and the saving of *1104 his property in Texas, the security agreements included a second deed of trust on the Eastwood Hills Subdivision property. It is clear from the record that this was only incidental to the main business transactions in Texas. The second deed of trust on the Mississippi property was not recorded and appellant at no time has attempted to gain by that instrument.
In June, 1972, Taylor applied for a loan on the Eastwood Hills Subdivision property. Undisputedly, the sole purpose for the loan was to complete the paving of the subdivision streets. Taylor had a prior loan with Bankers Trust Savings & Loan Association for development of the subdivision, and in June, 1972, he owed the Savings & Loan Association a balance on that loan of $67,082.60.
The procedures taken by the Savings & Loan Association in June, 1972, prior to increasing the loan for the purpose stated, were ample to determine if the loan was a good investment for the Association. Several representatives of the Savings & Loan Association and an independent realtor examined the property and reported to the Association's Loan Committee composed of four officers. The Committee did not include appellant. The regulations of the Association required that at least three members of the loan committee approve all loans. Undisputedly, the Savings & Loan Association was interested in making loans for developing subdivisions. In addition to the benefits of the loan itself, the Association expected to finance the construction of future homes and receive benefits from assignments of mortgages thereon.
The loan committee determined that Taylor's application constituted a good loan for the Association. It then entered into an agreement with Taylor, the agreement being handled by officers of the Association other than appellant, to increase the Taylor loan to $105,000. Taylor's application was accepted by the loan committee. The necessary papers were prepared and forwarded to a reputable attorney in Columbus for the loan closing. On the Association's instructions the papers were prepared and the loan funds were distributed as follows: $67,082.60 to the Savings & Loan Association to pay the balance of the existing loan on the property; $2,100 to the Savings & Loan Association as its processing or discount fee; $50 for preparation of the loan papers; the balance of $35,767.40 was delivered to the Savings & Loan Association and placed in an escrow account to pay the cost of the street paving. Addition reveals that the above distributed loan funds constituted the exact amount of the loan and that Taylor received nothing.
We should stop here and state that the loan in question was paid in full, together with complete interest and to the entire satisfaction and full recovery of the Savings & Loan Association. This was done approximately four years before the present indictment was returned against appellant.
The sole argument of the State in attempting to justify this prosecution was that the incidental second deed of trust was placed on the property in connection with the extensive financial dealings in Texas between appellant and Taylor. As hereinbefore stated, at no time did appellant make any attempt to benefit from this second deed of trust. In fact, it was at his suggestion that after the loan in question was made the Savings & Loan Association entered into a joint venture with Taylor whereby the representatives of the Savings & Loan Association and Taylor would jointly place the lots in the subdivision on the market, would handle the sales jointly, and each would receive one-half of the profits from such lot sales. This completely nullified any possible benefit appellant could have had under his incidental and unrecorded second deed of trust. No attempt whatever was made by appellant to benefit therefrom. The evidence in the record is undisputed that on prior occasions appellant, as head of the lending institution, had assisted the Association by personally arranging for the securing of property on which the Association would then make proper, adequate and sufficiently secured loans and would then enter into joint venture agreements with the owner, as was *1105 done during the pendency of the loan in question. The only chance taken in these transactions to benefit the Association was the chance taken by appellant.
There are numerous cases interpreting the requirements to sustain a conviction under Code section 97-19-39, hereinbefore set out, and under which appellant was indicted. The basic three requisites were enunciated by this Court, through Chief Justice Gillespie, in the case of Hughes and Travis v. State, 326 So.2d 469 (Miss. 1976). There the Court said:
The State concedes that Neece v. State, 210 So.2d 657 (Miss. 1968), precludes a conviction for obtaining money by false pretenses unless there is a showing (1) that the pretenses were false, (2) that the defendant knew them to be false, and (3) that the pretenses were the moving cause by which the money was obtained. The third element, set out above, was explained and amplified in Breland v. State, 222 Miss. 792, 77 So.2d 300 (1955), where the Court said: "[A] material element of this offense [obtaining money by false pretenses] is that the false representation must have been relied on by the party defrauded."
In Breland v. State, supra, the Court said of an indictment for false pretense involving the statute under which appellant was indicted that "another material element of this offense is that the false representation must have been relied on by the party defrauded."
In Lee v. State, 244 Miss. 813, 146 So.2d 736 (1962), the Court, through Justice Rodgers, held that in a prosecution under the false pretense statute in question it is necessary for the State to prove beyond a reasonable doubt that the accused made some false pretense in order to sustain a conviction. Admittedly the false pretense does not necessarily have to be shown by words alone. It may be shown by acts, conduct, or even silence. We do not find sufficient evidence in this record to hold that the State proved beyond a reasonable doubt that appellant made a false pretense that caused the Savings & Loan Association any detriment.
As hereinbefore stated, regardless of what was said or done, the Savings & Loan Association lost nothing as a result thereof, but, on the other hand, made money as a result of a legitimate business transaction approved by the duly authorized officials of the Association. This was done after the Association examined, investigated and processed the loan application according to its established rules and regulations.
In 35 C.J.S. False Pretense § 28, page 849, the prevailing rule is set out as follows:
In order for the offense to arise, a detriment or injury to the prosecutor has been required. Thus, while the statutes do not in express language require that the person from whom the property is obtained should be defrauded thereby, but only that it be obtained with intent to defraud him, nevertheless it is a general rule that the crime is not committed unless he is in fact defrauded, although under some statutes it has been said to be unnecessary that the victim be actually defrauded or injured. Hence, as a rule, the crime is not committed if the prosecutor gets out of the transaction just what he bargained for.
Under the above textbook quote, several Mississippi cases are annotated; Bruce v. State, 217 Miss. 368, 64 So.2d 332 (1953); Simmons v. State, 160 Miss. 582, 135 So. 196 (1931); Overall v. State, 128 Miss. 59, 90 So. 484 (1922).
In Overall, supra, in discussing the requisites of proving a charge of false pretense, it was stated:
... The main object of the statute is to protect purchasers against deceit and injury by sellers who know the property is encumbered, by requiring that the seller must disclose its exact status. So, if there is no deception of the purchaser, or, to put it in another way, if the purchaser knows what he is buying  knows there is a lien upon the property  and he purchases it, then he is not deceived and injured by the seller, and consequently nothing is obtained by false pretenses, and there is no violation of the law.
*1106 In Bruce v. State, supra, there was involved the identical false pretense statute with which we are involved in the case sub judice. The Court had the following to say:
Without regard to whatever offense the defendant may have been guilty of, it is well-settled under our decisions and by the textwriters that in order for one to be guilty of obtaining money under false pretenses, he must obtain the property of another by the false pretenses and to the detriment or injury of the person from whom he obtains the same.

In the case of Pippin v. State, 126 Miss. 146, 88 So. 502, 503, wherein this Court held that the rules of ownership of property obtained in false pretense cases is the same as in larceny, it was said: "This court has decided that the name of the party defrauded must be alleged and (the) proof must sustain the allegation. State v. Tatum, 96 Miss. 430, 50 So. 490; Hampton v. State, 99 Miss. 176, 54 So. 722; McAlpin v. State, 123 Miss. 528, 86 So. 339." It is contended for the State, however, that the indictment is under Section 2149, Code of 1942, and that it is only necessary to prove the occurrence of those facts which constitute the offense, as set forth in the statute, which by its terms does not require that the person from whom the money or property is obtained by false pretenses shall sustain an injury or be defrauded thereby. The pertinent part of the statute reads as follows: "Every person, who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense . . obtain from any person any money, personal property, or valuable thing, upon conviction ... shall be punished ...."
The statute above quoted from is similar to that involved in the case of Simmons v. State, 160 Miss. 582, 135 So. 196, to the extent that neither of the statutes expressly require that the person from whom the money or other personal property is obtained shall be defrauded. In the Simmons case the statute declared one to be guilty of obtaining under false pretenses whatever he received from the person dealing with him, when he sold or encumbered any property on which there was a lien, without informing the person to whom he sells or encumbers the same, of the exact state of the property as affected by the lien, etc. In other words, the statute, by its terms, provides that one who does the thing mentioned therein shall be guilty of obtaining the money or property under false pretense. But the Court held that where the purchaser of the automobile there involved obtained a good title to the same, he was not defrauded and could not have sustained a loss since he could successfully assert his title against the claim of the person in whose favor the encumbrance on the automobile had been previously given. Such is the case as between the store owner, W.D. Bethea, and the operator of the filling station who had formerly cashed the negotiable instrument in question and had lost or had otherwise been deprived of the possession thereof.
The Court cited the Simmons case with approval in Martin v. State, 200 Miss. 142, 26 So.2d 169, and held, as was conceded by the Attorney General, that the purchaser must have been actually defrauded. In the Martin case the defendant was shown to have told the prosecuting witnesses that he and his associates had spent $4,000 to buy mineral lease, when in fact he had paid only $1,200 for the same. By means of this false representation, he induced the prosecuting witnesses to give him a check for $666.40 for a one-sixth interest in the lease which he as payee endorsed to one of his associates, and which was thereafter cashed. The Court held in effect that it was not only necessary to prove that money was obtained from the prosecuting witnesses on the check but that it was necessary to prove that they were actually defrauded. The State failed to prove that the lease was not worth what the defendant falsely claimed to have paid for the same. In other words, it is not sufficient to show that an accused has obtained money from *1107 another by false pretenses; it must be further shown that the person from whom the money is thus obtained was actually defrauded. (Emphasis supplied).
The loan to Taylor was made by Savings & Loan Association after full investigation by its duly authorized representatives and approved by the members of the loan board (none of whom was appellant). The Savings & Loan Association distributed no funds to anyone other than itself [except the $50 paid for preparation of papers]. The Association received all interest it requested. It asked for and received from Taylor a joint venture under which he and the Savings & Loan Association would share in any profits from the sale of lots. The loan was fully repaid. It is undisputed that this business venture was the type the Savings & Loan Association was looking for and was in the business to handle. It lost nothing, but on the other hand gained a profit. It received everything it requested or wanted. There was no fraud perpetrated on the Savings & Loan Association.
It is clear that the State in no way proved the charges in the indictment and it follows that this Court is required to reverse the cause and discharge the appellant.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE and COFER, JJ., concur.
SUGG, J., took no part.