605 So.2d 758 (1992)
Bobby ALLRED
v.
STATE of Mississippi.
No. 89-KA-1106.
Supreme Court of Mississippi.
July 29, 1992.
*759 Thomas D. McDonough, New Albany, for appellant.
Michael C. Moore, Atty. Gen. and Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
McRAE Justice, for the Court:
Bobby Allred appeals his September 5, 1989, conviction by a jury of the Union County Circuit Court on charges of false pretenses pursuant to Miss. Code Ann. § 97-19-39 (1972) stemming from his failure to repair properly a leaking roof. Finding that Allred's conviction on criminal charges is contrary to the weight of the evidence, we reverse.

I.
In December, 1988, Mrs. Vance Scott, an eighty-five year old widow confined to a wheel chair, contacted Bobby Allred, a roofer with thirty years experience in the community, about her leaking roof. Allred investigated and determined that the roof was in very worn condition. He recommended to her that it should be replaced. After some discussion, he and Mrs. Scott agreed that the leaks could be repaired without replacing the entire roof.
Allred started work on the roof on or about December 18, 1988 and completed the job the next day. He testified that he and his crew patched parts of the roof, using about three bundles of shingles, and tore out and replaced two "valley" areas that were leaking. On the back part of the house, as well as on a flat area, he stated that they applied a silicone seal under the shingles. Allred estimated that approximately sixty percent of the roof area was so treated.
Allred indicated that he and his crew also took care of minor repairs on the house, including leveling the back of the house with a jack; resetting the blocks on a utility shed to level it; replacing a plank on the doorstep; and wrapping some exposed pipes under the house.
There is some disagreement as to how much time Allred spent on the job. Allred testified that he and his crew worked for about fourteen and one half to fifteen hours over a two day period. Mrs. Scott, however, stated that they were only there from 10:30 a.m. until 1 p.m. the first day, and from 11:30 a.m. until 4:00 p.m. the next day.
After he had finished, Mrs. Scott paid Allred $1,200.00, which she had taken out of her safe deposit box. She made out a receipt which indicated that she had paid him $1,200.00 to "Repair Roof." On the reverse side of the receipt, Allred wrote:
Repair all roof. One year warranty on all leaks.
Bobby Allred. 534-8471
Within a matter of days, it began to rain again and the roof still leaked. Allred went over to Mrs. Scott's house on several occasions to check for leaks and to repair those which remained. Nevertheless, the roof continued to leak.
Mrs. Scott's nephew, Floyd McKenzie, inspected Allred's work when he went to check on his aunt. McKenzie testified, however, that he did not lift up any of the shingles to check for application of the *760 silicone sealant. He further indicated that although he saw no evidence of the other work that Allred was supposed to have done, he observed that two pipes had been wrapped in newspaper.
McKenzie then contacted Carlton Hall, the City of New Albany zoning administrator/building inspector. Hall, in turn, called Chief of Police David Grisham to complain about the work done on Mrs. Scott's roof. Hall and Grisham subsequently went to Mrs. Scott's house, where they took pictures of portions of the roof. Hall testified that other than the replacement of some shingles, he saw no evidence that any other work had been done. He further stated that the silicone he did see was, in his opinion, older than a week or two. Grisham also testified that he observed that two small areas on the back of the roof had been re-shingled. He further stated that he did not lift up any shingles to check for silicone, nor did the others with him, Hall and McKenzie.
Some three months later, Mrs. Scott had new shingles put on the entire roof by another local roofer, Ronnie Jarvis, for $3,300.00.
Unbeknownst to Mrs. Scott, criminal proceedings were initiated against Allred. He was indicted on charges of false pretenses on February 16, 1989, and found guilty after a two-day jury trial. At a separate hearing held on September 5, 1989, the Circuit Judge sentenced Allred to serve three years in the custody of the Mississippi Board of Corrections; to pay a fine of $300.00 and restitution of $1,200.00; and to serve five years of supervised probation. He was further ordered to serve thirty days in the county jail on weekends from 5:00 p.m. Friday to 5:00 p.m. Sunday. However, apparently taking into consideration Allred's ability to work as well as his responsibility for caring for his disabled wife, the Circuit Court ruled that two years and eleven months of the sentence, as well as the probation period, would be suspended contingent upon the payment of restitution, the fine, and court costs and fees by March 5, 1990.

II.
Although other valid issues were raised on appeal, we focus directly on the pivotal question of whether Allred's conviction on charges of false pretenses was contrary to the weight of the evidence and whether the Circuit Court erred in overruling Allred's peremptory instruction and his motion for a directed verdict, which was properly renewed at the close of all evidence. Harris v. State, 413 So.2d 1016, 1018 (Miss. 1982); Ross v. State, 234 Miss. 309, 106 So.2d 56 (1958); Fields v. State, 293 So.2d 430 (Miss. 1974).
We have held, when considering a motion for a directed verdict, that we must consider all of the evidence in a light most favorable to the State, accepting all of the evidence as true, as well as all reasonable inferences that may be drawn therefrom. McGee v. State, 569 So.2d 1191, 1192 (Miss. 1990); Barnwell v. State, 567 So.2d 215, 217 (Miss. 1990).
Likewise, when considering a request for a peremptory instruction, we must accept all evidence presented by the State to be true, along with all reasonable inferences that can be drawn therefrom. Only when there is sufficient evidence to sustain a conviction, should a peremptory instruction be refused. Brown v. State, 556 So.2d 338, 340 (Miss. 1990); Benson v. State, 551 So.2d 188, 193-194 (Miss. 1989).
In considering whether a jury verdict is against the overwhelming weight of the evidence, we likewise have held that we must accept as true all of the evidence supporting the verdict, and will reverse only when the Circuit Court has abused its discretion in refusing to grant a new trial. Thornhill v. State, 561 So.2d 1025, 1030 (Miss. 1989).
Allred was indicted and convicted pursuant to Miss. Code Ann. § 97-19-39 (1972), which articulates the criminal charge of false pretenses as follows:
Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any *761 written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained.
Id. (Emphasis added)
In a false pretenses case, the burden of proof is on the State to show beyond a reasonable doubt that a false representation was made with regard to an existing fact. Lee v. State, 244 Miss. 813, 146 So.2d 736, 73 (1962); Button v. State, 207 Miss. 582, 42 So.2d 773 (1949). Accordingly, the State must prove that "the pretenses were false, that the appellant knew them to be false and that the pretenses were the moving cause by which the money was obtained." Gordon v. State, 458 So.2d 739, 740 (Miss. 1984), citing Neece v. State, 210 So.2d 657 (Miss. 1968); Hughes (and Travis) v. State, 326 So.2d 469 (Miss. 1976). Furthermore, the property or money obtained under false pretenses must have been "to the detriment or injury of the person from whom he obtains the same." Carter v. State, 386 So.2d 1102, 1105 (Miss. 1980), quoting Bruce v. State, 217 Miss. 368, 64 So.2d 332 (1953).
Looking at the record in a light most favorable to the State and accepting as true all of the evidence which supports the verdict, we find that Allred received $1,200.00 from Mrs. Scott in return for the repairs he made to her roof. There is evidence that he expended time and materials in doing so. Mrs. Scott prepared a receipt indicating that she had paid Allred to "repair roof." On the back of the receipt, Allred wrote "Repair all roof. One year warranty on all leaks." From testimony given by both Allred and Mrs. Scott, it is clear that the two agreed that Allred would repair all of the leaks in the roof, rather than repairing or replacing the entire roof.
The State, however, has failed to present any evidence whatsoever that Allred acted with an intent to defraud Mrs. Scott. Absent a showing of intent to defraud, the elements of the crime of false pretenses are not fully satisfied. The record reveals evidence only of shoddy workmanship. At best, the State has set out the basis for a civil suit based on breach of contract. We therefore find that the jury verdict was against the overwhelming weight of the evidence and that the Circuit Court erred in not granting Allred's motion for a directed verdict or his instruction for a peremptory instruction. Accordingly, we reverse.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.