CARLTON, J.,
 

 for the Court:
 

 ¶ 1. A jury in the DeSoto County Circuit Court found Manual Cooper guilty of the crime of false pretenses. The trial court sentenced Cooper as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007) to life without eligibility for parole or probation. The trial court subsequently denied Cooper’s motion for a judgment notwithstanding the verdict (JNOV) and motion for a new trial. Cooper is presently incarcerated in an institution under the supervision of the Mississippi Department of Corrections (MDOC). Aggrieved, Cooper appeals his conviction and sentence raising the following issues for this Court’s review: whether the trial court erred in (1) denying Cooper’s motion for a directed verdict and a JNOV, (2) denying Cooper’s motion for a new trial, and (3) allowing the hearsay testimony of Officer Greg Oltremari. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. A trial commenced on April 28, 2009, in the Circuit Court of DeSoto County. At the trial, Hazel Baker, an elderly widow, testified that on April 24, 2007, Cooper, along with three other males, approached her and offered to clean the gutters on her house for approximately two hundred dollars. Baker testified that she agreed to the price, and the men began their work on the exterior of her house. Baker testified that at some point later, she walked into her backyard and spoke with Cooper. Baker testified that she saw Cooper walking around in the back yard and saw one man on a ladder wiping the exterior of one of the gutters. Baker then testified that she had the following conversation with Cooper:
 

 Well, when they said they was through, I told him that I would have to go in. And he said we’ll go in and figure up how much it is, and I said I’ll have to get my checkbook. And he said, well, we don’t take checks. We have to have cash. So I went in the house, and he followed me in the house and was hovering right over me. And he said that I would have to give him the cash, and at that time I got afraid, and I told him, I said, ‘Well, I’ll have to go to the bank to get the money.” And he said, “Well, you’ll just have to go up there and get it.” And I said, “[b]ut I can’t drive. I just had surgery.” And he says, “Well, I’ll drive you up there.” And dumb me, I let him drive me up there.
 

 [[Image here]]
 

 [W]hen he came in, I was going to write him out a check, and I asked him how much it would be. And he at first said [$]2[,]500, and it just floored me. And so then when he said that, he said, “[b]ut I’ll drop it to [$]2[,]000.” And I still, you know, couldn’t believe that he was saying that, but I knew I had to do something, and I was afraid to not do it. And so we went to the bank, and I drew out $2,000 and gave — but I didn’t give it to him right then.
 

 Baker testified that after she and Cooper returned to her house from the bank, she gave Cooper the money and requested a receipt. Baker then testified that Cooper told her that he was out of receipts, but he promised to bring her one the next day. Baker testified that Cooper then wrote the name “Tom. Lee” and a telephone number
 
 *744
 
 on a sheet of paper torn from a notebook, representing the name and number as his own, and promised to return the following day with a receipt. Baker testified that Cooper also told her that she could reach him anytime at that number. Baker further testified that she soon realized that the name and number Cooper had provided her were fictitious, as the name written was “Tom Lee,” not Manual Cooper, and no one answered the telephone number when she called. Baker testified that after these events occurred, she called her son, and he contacted the Southaven Police Department. Officer Greg Oltremari and Detective Todd Samples, both of the Southa-ven Police Department, investigated the claim.
 

 ¶ 3. At trial, Cooper testified that he, his brother-in-law, and their sons approached Baker at her house on April 24, 2007. Cooper testified that upon arrival at Baker’s house, his brother-in-law, Clarence Worley, offered to clean and repair Baker’s vinyl siding.
 
 [1]
 
 Cooper testified that after Baker had accepted the offer, they began their work of cleaning and repairing the vinyl siding on her house. Cooper testified that Baker remained inside her house the entire time that the men conducted their work on the exterior of her house. Cooper further testified that after the men completed the work, he described to Baker the work that they had completed on her home and told her that she owed them $2,500; but he later decreased the amount to $2,000. Cooper testified that Baker requested a ride to the bank to get the cash for payment and that he volunteered to drive her there. Cooper then testified that when they arrived back to Baker’s house, she paid him and requested a receipt. Cooper testified that Worley handed him a sheet of paper with his name and telephone number on it to give to Baker.
 
 [2]
 
 Throughout his testimony, Cooper provided that he never threatened or intimidated Baker.
 

 ¶ 4. At the conclusion of the trial, the jury found Cooper guilty of false pretenses. The trial court then sentenced Cooper under Mississippi Code Annotated section 99-19-83 (Itev.2007) as a habitual offender to a term of life without eligibility for parole or probation. Aggrieved, Cooper filed this appeal.
 

 DISCUSSION
 

 I. SUFFICIENCY OF THE EVIDENCE
 

 ¶ 5. In his first assignment of error, Cooper argues that the trial court erred in denying his motion for a directed verdict and a JNOV because the State failed to prove that Cooper intended to cheat or defraud the alleged victim. Cooper asserts that he never represented a past or existing fact that the work on the house was completed. In response, the State claims that a reasonable juror could have found Cooper guilty based on the evidence presented by the State; thus, the trial court committed no error in denying Cooper’s motion for a directed verdict.
 

 ¶ 6. This Court utilizes a well-established standard of review when considering a denial of a motion for directed verdict or for a JNOV.
 
 Conner v. State,
 
 45 So.3d 300, 303 (¶ 10) (Miss.Ct.App.2010) (citing
 
 Alford v. State,
 
 656 So.2d 1186, 1189 (Miss.1995)). “The standard of review for
 
 *745
 
 denial of a motion for a directed verdict or for a JNOV is the same.”
 
 Id.
 
 (citing
 
 Alford,
 
 656 So.2d at 1189). When reviewing a motion for a directed verdict, we look to the sufficiency of the evidence and construe the evidence in the light most favorable to the prosecution.
 
 Id.
 
 (citing
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005)). The Mississippi Supreme Court in
 
 Bush
 
 provided the following:
 

 [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a]directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to
 

 “ask itself whether
 
 it
 
 believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 Bush,
 
 895 So.2d at 843 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 

 ¶ 7. Mississippi Code Annotated section 97-19-39 (Rev.2006) codifies the crime of false pretenses. The jury convicted Cooper of a felony under section 97-19-39(2), which provides in pertinent part:
 

 Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00).
 

 Miss.Code Ann. § 97-19-39(2). In a false-pretenses case, the State must prove that “the pretenses were false, that the appellant knew them to be false[,] and that the pretenses were the moving cause by which the money was obtained.”
 
 Allred v. State,
 
 605 So.2d 758, 761 (Miss.1992) (citing
 
 Gordon v. State,
 
 458 So.2d 739, 740 (Miss.1984)). The State bears the burden of proof to show beyond a reasonable doubt that a false representation was made with regard to an existing fact.
 
 Id.
 
 (citing
 
 Lee v. State,
 
 244 Miss. 813, 818, 146 So.2d 736, 737 (1962);
 
 Button v. State,
 
 207 Miss. 582, 587, 42 So.2d 773, 774 (1949)). The property or money obtained under false pretenses is required to be “to the detriment or injury of the person from whom he obtains the same.”
 
 Allred,
 
 605 So.2d at 761 (quoting
 
 Carter v. State,
 
 386 So.2d 1102, 1105 (Miss.1980)).
 

 ¶ 8. When considering the facts in the present case in the light most favorable to the State, we find sufficient evidence existed in this record for the jury to convict Cooper of false pretenses. The jury heard testimony from the victim, Baker, that Cooper offered to clean her gutters on her house for approximately two hundred dollars. Baker testified that no agreement concerning the cleaning or repairing of the house’s vinyl siding existed. Baker further testified that neither party even mentioned the siding of her house at any time on the day in question, but reflected instead an agreement pertaining to cleaning the gutters on her house. In addition,
 
 *746
 
 Baker testified that after Cooper and his crew “worked” on her house, Cooper told her that he and his crew were “through” with their work and demanded $2,000, which she subsequently paid. The State also presented evidence to the jury through the testimony of Detective Samples, the criminal investigator in this case, and through photographs take by Detective Samples of the gutters on Baker’s house, that the gutters appeared uncleaned.
 

 ¶ 9. In light of these facts, we find that any rational juror could have found beyond a reasonable doubt that Cooper knowingly and intentionally made a false statement to Baker that the work was completed and payment was then due and that Baker paid Cooper $2,000. While Cooper contends that he never represented a past or existing fact to Baker that the work was completed, we find that the State presented sufficient evidence through Baker’s testimony for the jury to conclude that when Cooper communicated to Baker that he was “through” with the work, he was representing completion of the work of cleaning and repairing the gutters on Baker’s house.
 
 See Bush,
 
 895 So.2d at 843 (¶ 16). As such, this issue lacks merit.
 

 II. WEIGHT OF THE EVIDENCE
 

 ¶ 10. In Cooper’s second assignment of error, he asserts that the trial court erred in denying his motion for a new trial. Cooper argues that Baker’s testimony is contradictory, improbable, and was influenced by her son’s reactions to the costly job. In addition, Cooper alleges that this case is a simple contract case; thus, a criminal conviction of false pretenses is unconscionable.
 

 ¶ 11. The standard of review employed by this Court when reviewing a denial of a motion for a new trial is as follows:
 

 [An appellate court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.
 

 Welch v. State,
 
 45 So.3d 1231, 1235 (¶ 13) (Miss.Ct.App.2010) (citing
 
 Valmain v. State,
 
 5 So.3d 1079, 1086 (¶ 30) (Miss.2009)).
 

 ¶ 12. Examining the evidence in the light most favorable to the verdict, we are unable to find that the verdict is against the overwhelming weight of the evidence such that an unconscionable injustice will occur if we allow the verdict to stand.
 
 See Patterson v. State,
 
 37 So.3d 702, 704 (¶ 11) (Miss.Ct.App.2010) (citing
 
 Bush,
 
 895 So.2d at 844-45 (¶¶ 18-19)). The evidence presented at trial clearly supports the verdict.
 

 ¶ 13. At the trial, the jury heard testimony from Baker that: Cooper had offered to clean and repair the gutters on her house for $200; Cooper later communicated to Baker that he was “through” with the work and demanded $2,000 in payment; Baker paid this large sum of money out of fear; and Cooper provided Baker with a false name and telephone number when she requested a receipt. The State also presented evidence to the jury that the gutters appeared uncleaned. While Cooper alleges that Baker’s testimony is improbable and contradictory, we note that witness credibility is a matter for the jury to consider and determine.
 
 Price v. State,
 
 892 So.2d 294, 297 (¶ 15) (Miss.Ct.App.2004).
 

 ¶ 14. Despite Cooper’s testimony that he contracted with Baker to clean and repair the siding on her house, not the
 
 *747
 
 gutters, and that a contractual dispute exists due to the parties’ failure to reach a mutual agreement as to the work to be done on Baker’s house, the jury convicted him of false pretenses. This Court recognizes that conflicting testimony as to the offense of false pretense, which focuses on the false representations made by Cooper seeking payment, existed. The record shows that Baker clearly testified that Cooper represented to her that the work had been completed and that payment was due. Testimony also shows that indeed the work had not been completed, and further, Cooper knew that the work had not been completed when representing otherwise to Baker. The issue as to credibility and resolutions of conflicts in testimony lies within the province of the jury. This Court will not set aside a verdict merely on the ground of conflicting testimony where substantial evidence exists supporting the verdict.
 
 See Price,
 
 892 So.2d at 297 (¶ 15); see
 
 also Patterson,
 
 37 So.3d at 705 (¶ 14) (citing
 
 Crosby v. State,
 
 856 So.2d 523, 528 (¶7) (Miss.Ct.App.2003)).
 

 ¶ 15. Accordingly, we find nothing in the record to indicate that the trial court abused its discretion in denying Cooper’s motion for a new trial. This issue is without merit.
 

 III. HEARSAY
 

 ¶ 16. In Cooper’s final assignment of error, Cooper contends that the trial court erred in allowing Officer Oltremari to testify as to the statements made to him by Baker regarding the events that occurred on April 24, 2007.
 

 ¶ 17. This Court utilizes an abuse-of-discretion standard of review when reviewing a trial court’s ruling on the admission or exclusion of evidence.
 
 Woods v. State,
 
 973 So.2d 1022, 1028 (¶ 15) (Miss.Ct.App.2008) (citing
 
 Ladnier v. State,
 
 878 So.2d 926, 933 (¶27) (Miss.2004)). “An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party.”
 
 Id.
 
 (citing
 
 Ladnier,
 
 878 So.2d at 933 (¶ 27); M.R.E. 103(a)).
 

 ¶ 18. “Hearsay is defined as ‘a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter’ and is generally not admissible at trial.”
 
 Moss v. State,
 
 977 So.2d 1201, 1207 (¶ 5) (Miss.Ct.App.2007) (citing M.R.E. 801(c); M.R.E. 802). Mississippi Rule of Evidence 801(d)(1)(B) provides: “A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant’s testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....”
 

 ¶ 19. In the present case, at the time the State introduced the statements of which Cooper complains at trial, Baker, the declarant, had already testified at trial to the events that occurred on the day in question. Baker had also already testified that she told Officer Oltremari about these events when he investigated her case later that same day. The defense then cross-examined Baker. After Baker and Cooper testified, the State called Officer Oltremari to provide rebuttal testimony. Officer Ol-tremari testified that he responded to a call to Baker’s home on April 24, 2007, to investigate a false-pretenses claim. Officer Oltremari then testified to the disclosures that Baker made to him upon his arrival at her house, stating:
 

 A: Ms. Baker said that she was at home and a white pickup with four white males that had a magnetic sign on the door-she said she couldn’t remember
 
 *748
 
 what the sign said other than it had the word gutter in the sign-pulled up in front of her house. They wanted to solicit business of cleaning the gutters for her. She said that the male passenger told her that it would only cost her $200 to clean her gutters, and that while they went about their work, she went inside. A short time later the male passenger again wanted to speak with her and told her they were done, but that now the cost was going to be $2500, and she said that she could not pay that. So he said, “Well, I’ll cut you a break and make it 2000.”
 

 Q: And did she in fact end up paying them?
 

 A: Yes, she did.
 

 After reviewing the testimony in the record, we find that the first two requirements of the rule are satisfied so as to allow the introduction of Baker’s prior consistent statements.
 

 ¶ 20. Lastly, we must make a determination as to whether the State offered the statement to rebut an express or implied charge against Baker of improper influence or motive. Based on our review of the record, the defense attempted to imply that Baker only contacted the authorities due to her dissatisfaction with the amount that she agreed to pay Cooper. In addition, the defense implied that Baker’s son improperly influenced her to contact the authorities concerning the event at issue. The purpose of allowing the statements made to Officer Oltremari by Baker was to rebut the implications made by the defense that Baker had acted through improper influence or with an improper motive when she accused Cooper of false pretenses.
 

 ¶21. This Court finds that the State satisfied each of the prerequisites of Mississippi Rule of Evidence 801(d)(1)(B); thus, the statements are removed from the category of impermissible hearsay. Accordingly, we hold that the trial court did not abuse its discretion in admitting the testimony of Officer Oltremari. This issue lacks merit.
 

 ¶ 22. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF FALSE PRETENSES AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. IRVING, P.J., NOT PARTICIPATING.
 

 [1]
 

 . Cooper testified that he was unaware of Worley's whereabouts at the time of trial.
 

 [2]
 

 . On direct examination, Cooper testified that he lacks the ability to read and write. Upon cross-examination, however, Cooper testified that he can write his name in print and cursive and can copy writings in print if someone supplies a guide to follow.