LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. A jury in the Yazoo County Circuit Court convicted Michael Martin of one count of felony false pretenses. The jury *1147 was unable to agree on a verdict on another count. Martin was sentenced to five years, with two years to serve and three years suspended, in the custody of the Mississippi Department of Corrections, followed by three years’ post-release supervision.
¶ 2. Martin filed post-trial motions, which were denied. Martin now appeals, asserting the following issues, which we have rephrased and condensed for clarity: (1) the verdict is against the overwhelming weight of the evidence; (2) the evidence was insufficient to support his conviction; and (3) the trial court erred by denying his motion to quash the indictment.
FACTS
¶ 3. Bernice Moody, her sister, and her brother owned a house at 183 Passons Road in Bentonia, Mississippi. On or about October 26, 2008, the residence sustained water damage when a pipe in the bathroom ruptured. Approximately three-fourths of the house was damaged. The insurance claims adjuster, Steve Griffin, inspected' the house and determined the actual cash value of the loss to be $21,483.32.
¶ 4. Moody entered into an agreement with Martin to make the necessary repairs. After receiving a settlement check, Moody wrote Martin a check for $2,500. The agreement, which was signed by Moody, Martin, and Griffin, stated that Martin would “replace, fix[,] and treat all mold and water damage that will be covered by [Moody’s] insurance.” About the same time, Martin entered into an agreement to rent the house from Moody and her siblings while completing repair’s.
¶ 5. Moody testified Martin represented to her that he was a licensed contractor. Moody and Griffin testified Martin showed them his contractor’s license. The license stated it was issued for Trademark Homes. Shortly after construction began, Moody asked Martin for invoices for the purchase of wood treatment and asbestos testing. Moody was initially suspicious of two of Martin’s invoices for the wood treatment and asked him for more documentation. Martin presented invoices for $274.39 and $96.17 for the wood treatment product and $214 for the asbestos testing. The invoice for the asbestos testing indicated the test was negative for asbestos in the tile. Moody wrote Martin a check for $584.56.
¶ 6. Moody subsequently learned Martin did not have a Mississippi contractor’s license. Moody also learned the document showing no presence of asbestos in the tile was fictitious. After contacting the laboratory that had performed the test, Moody learned the tile contained asbestos. Moody then contacted the Attorney General’s Office and filed a complaint against Martin.
¶ 7. Martin admitted he had fabricated the two invoices for the wood treatment as well as the document purporting to be the asbestos test. Richard McCluskey, Chief Investigator for the Consumer Protection Division of the Attorney General’s Office, investigated Moody’s complaint against Martin. McCluskey discovered Martin never had a contractor’s license. The rightful owner of the license Martin showed Moody and Griffin was Marty Tor-rence. Torrence testified Martin had done subcontract work for him in the past, but he did not give Martin permission to use his contractor’s license. Although Martin testified the wood treatment was used in Moody’s house, McCluskey determined the wood treatment had not been applied in the house.
¶ 8. The two fabricated invoices for the wood treatment listed S.E.C. Building Company, with the address of 1443 Gluck- *1148 stadt Road, Madison, Mississippi. Martin testified that his father, William Perry Martin, had obtained the wood treatment for Martin. Martin claimed his father’s business was called S.E.C. Building Company. However, William, who had done business as S.E.C. in the past, admitted the address of his company listed on the invoice was fictitious. William testified he had procured the wood treatment from a man named Spires. Spires allegedly gave William the address, 1443 Gluckstadt Road, to use on the receipt. McCluskey determined this address did not exist. During MeCluskey’s investigation, Martin told McCluskey he had gotten the wood treatment from a friend named Chris Lowery. Lowery was unable to be located.
DISCUSSION
I. OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 9. In his first issue on appeal, Martin contends the jury verdict is against the overwhelming weight of the evidence. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 10. Mississippi Code Annotated section 97-19-39(2) (Rev.2006) states the following:
Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00).
In a false-pretenses case, the State must prove that “the pretenses were false, that the appellant knew them to be false[,] and that the pretenses were the moving cause by which the money was obtained.” Gordon v. State, 458 So.2d 739, 740 (Miss.1984). The State bears the burden of proof to show beyond a reasonable doubt a false representation was made with regard to an existing fact. Allred v. State, 605 So.2d 758, 761 (Miss.1992) (citing Lee v. State, 244 Miss. 813, 818, 146 So.2d 736, 737 (1962)). The property or money obtained under false pretenses is required to be “to the detriment or injury of the person from whom [the defendant] obtains the same.” Id. (quoting Carter v. State, 386 So.2d 1102, 1105 (Miss.1980)).
¶ 11. Examining the evidence in the light most favorable to the verdict, we are unable to find that the verdict is against the overwhelming weight of the evidence to an extent that an unconscionable injustice will occur if we allow it to stand. The jury heard evidence that: Martin falsely represented himself as a licensed contractor; Martin gave Moody three fictitious invoices totaling $584.56; the invoice containing the asbestos test result indicated a negative result, when in fact there was asbestos in the tile; Martin never paid for the initial asbestos report; the wood treatment was not applied to the walls of Moody’s house; and Moody paid $584.56 to Martin.
*1149 ¶ 12. Although Martin and his father testified the wood treatment was applied, it was within the jury’s province to determine the credibility of the witnesses and resolve conflicts in the evidence. Clearly, the jury resolved any conflicts in favor of the State. This issue is without merit.
II. SUFFICIENCY OF THE EVIDENCE
¶ 13. Martin next contends the trial court should have granted a directed verdict in his favor at the end of the State’s case-in-chief and at the end of the trial. Martin also argues the trial court should have granted his motion for a judgment notwithstanding the verdict (JNOV). As all of these issues address the legal sufficiency of the evidence, we will address them together. Regarding whether the evidence is legally sufficient to support the verdict, we look to our standard of review. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’” Bush, 895 So.2d at 843 (¶ 16) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. We reiterate that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Davis, 866 So.2d at 1112 (¶ 17).
¶ 14. From the evidence described in the previous issue, we find a rational jury could have found beyond a reasonable doubt that the essential elements of false pretense existed. This issue is without merit.
III. INDICTMENT
¶ 15. Finally, Martin contends the trial court erred by denying his motion to quash the indictment. Martin argues the State should not have combined the three invoices in order to charge him with a felony. According to Mississippi Code Annotated section 97-19-39(1) (Rev. 2006), false pretenses is a misdemeanor if the amount is under $500. Martin argues at most he should have been charged with three misdemeanors. Martin has cited no authority to support his contention. Martin’s “failure to cite legal authority in support of [his] position invokes [a] procedural bar.” Young v. State, 919 So.2d 1047, 1049 (¶ 5) (Miss.Ct.App.2005).
¶ 16. Regardless of the procedural bar, we find no merit to Martin’s issue. The three fictitious invoices were presented to Moody at the same time in a single transaction. The invoices were treated as one, and Moody made one payment.
¶ 17. THE JUDGMENT OF THE YA-ZOO COUNTY CIRCUIT COURT OF CONVICTION OF FELONY FALSE PRETENSES AND SENTENCE OF FIVE YEARS, WITH TWO YEARS TO SERVE AND THREE YEARS SUSPENDED, FOLLOWED BY THREE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.